**ARGO MARINE SYSTEMS, INC., Plaintiff,**

v.

**CAMAR CORPORATION, Defendant.**

**No. 81 Civ. 4849 (MP).**

United States District Court, S.D. New York.

July 12, 1984.

Law Offices of Stuart A. Jackson by Stuart A. Jackson, John A. Harras, New York City, for plaintiff.

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy by Douglas R. Burnett, Richard H. Webber, New York City, for defendant.

## MEMORANDUM

MILTON POLLACK, Senior District Judge.

Defendant Camar Corporation, having obtained a dismissal of plaintiff's action and a judgment on its counterclaim in an amount of $125,560, plus interest, costs and disbursements, *see* Findings and Opinion (May 25, 1984), now applies to the Court for imposition of monetary discovery sanctions upon plaintiff pursuant to Rule 37(b)(2), Fed.R.Civ.P.

Camar asserts that plaintiff flouted defendant's document discovery request, made pursuant to Rule 34, Fed.R.Civ.P., and two Court orders which, in part, effectuated and amplified that request. Camar claims that as a result plaintiff should be ordered to pay Camar its reasonable expenses, including attorneys fees, caused by plaintiff's discovery violations. Camar states in a letter to the Court that it "considers sanctions of not less than $50,000.00 to be appropriate in the circumstances."

Following a hearing during which both sides presented evidence and arguments relating to the discovery history of this action, and after a careful consideration of all the facts and circumstances of this case, the Court imposes sanctions upon plaintiff under Rule 37 in an amount of $3500.00 to be paid to defendant, to be inserted at the foot of the judgment herein.

### FACTS

Plaintiff commenced this diversity action, which alleged that defendants owed plaintiff compensation in the form of commissions and otherwise in connection with sales of defendant's maritime equipment, in August 1981.

On September 4, 1981, defendants served upon plaintiff and filed with the Court a request for production of documents related to this litigation, primarily correspondence between and related to the parties and personal records and memoranda maintained by four employees of plaintiff, including plaintiff's chief trial witness, Erich H. Nietsch.

Following a November 13, 1981 pretrial conference during which the Court was informed that plaintiff had not yet complied with this document request, the Court issued an order which in part stated:

ORDERED that the plaintiff on or before November 27, 1981 produce for discovery the documents demanded as amended by the Court in the defendant's demand dated August 31, 1981 together with a sworn affidavit made by a responsible officer on behalf of the plaintiff indicating any failure to produce and the reason therefor and the degree of the search made therefor. The failure to make such production shall be basis for appropriate sanctions including possible dismissal of this suit in pursuance of Fed.R.Civ.P. 37.

In purported compliance with this Court Order, plaintiff filed with the Court on December 8, 1981, an affidavit, signed by Erich Nietsch, which described the document production being afforded by plaintiff to defendant and stated:

The examination of records by [plaintiff's attorney] and myself was exhaustive and, in our belief, constitute full compliance with defendant's Notice, except where documents demanded do not exist in plaintiff's files, as stated in its Answer to Request to Produce, dated September 21, 1981.

A first bench trial of this matter commenced on April 15, 1983. On that day, during the direct examination of plaintiff's former employee and principal witness Erich Nietsch, Nietsch testified, in response to questioning by the Court, that he had kept notations regarding important meeting dates and telephone calls relevant to this litigation on calendar desk pads, and that such pads "should be" available. The transcript of part of this inquiry reads as follows:

THE COURT: Where is the pad?

THE WITNESS: Well, they are back in Argo Marine.

.    .    .    .    .    .

THE COURT: Have you seen the pad recently?

THE WITNESS: No, sir.

THE COURT: What does the pad consist of?

THE WITNESS: Just a date pad on my desk.

THE COURT: We are talking about a date pad in 1980?

THE WITNESS: Yes.

THE COURT: Do you still retain that date pad?

THE WITNESS: It has been a habit of mine to do that?

THE COURT: I said, do you still retain it? Is it available?

THE WITNESS: It should be.

Trial Transcript, p. 88 (April 15, 1983).

The trial resumed the following Monday, April 18, 1983. Neitsch testified that he had located his calendar pads for the years 1979 and 1980 on the evening of the first trial day. Defendant's counsel strenuously objected to plaintiff's attempt to introduce the pads in evidence or otherwise use them at trial. This objection was on the ground that defendant had made a specific request for production of the pads during the course of a deposition of Neitsch on March 11, 1982, and that Neitsch had testified during the continuation of that deposition on March 17, 1982 that he had attempted to locate the pads but was unable to find them. Thus, it was only upon the first day of the 1983 trial that defendant's counsel learned that the calendar pads might in fact be available.

Upon the resumption of his trial testimony on April 18, 1983, Nietsch utilized the pads in connection with his account of the chronology of meetings and telephone calls he said he had had with Mercanti, defendant's president, and with Nealis and Gousettis, representatives of a purchaser of Camar equipment and persons involved with certain transactions at issue in the litigation.

Defense counsel again objected that it had been severely prejudiced by the belated finding of the pads and plaintiff's attempted use thereof, stating in particular that it thereby had been prevented from effective-

ly examining Nealis, who had been a defense witness called out of turn at the start of the trial and had departed from New York, and from deciding to conduct a pretrial deposition of Gousettis.

As a result of the obvious prejudice to defendant's position resulting from plaintiff's failure to make timely production of the pads—which were the only written records kept by Nietsch of various of his activities bearing relevance to this litigation—the Court declared a mistrial during the middle of the second trial day, stating:

> THE COURT: I am going to declare a mistrial of this case for the misconduct of the witness in connection with the discovery proceedings, to the prejudice of the defendant, and give the defendant an opportunity to conduct an appropriate discovery procedure and when the case is ready for trial again, why, we will set a new trial date.
>
> The defendant is directed to present a discovery order which will enable the defendant to prevent any future repetition of a failure to disclose documents of this kind and to obtain appropriate sanctions which they will be entitled to for a delay, or careless or indifferent discovery.
>
> This is a very disturbing thing and in the ordinary course warrants monetary sanctions for the expenses involved and those will be considered in connection with the resumed trial or the new trial that will be had here, depending upon the explanations that are furnished and submitted to the Court at that time.

Trial Transcript, p. 122 (April 18, 1983).

Shortly thereafter, and upon motion of the defendant for additional discovery required in light of the belated uncovering of the calendar pads, the Court issued a second discovery order directing that five additional depositions be held and ordering the following with respect to document production:

> Original desk calendar pads of Eric Nietsch for the years 1979, 1980, and 1981, will be produced for inspection not later than Monday, May 9, 1983; *as will other documents and files* in the possession, custody or control of Plaintiff or any of the affiliated, subsidiary, or parent corporation or any of their offices *as relate to the subject matter of this action and as have not yet been produced.*

Order, May 3, 1983 (emphasis added).

After the conduct of additional discovery by both parties, a change in attorneys by plaintiff, and the filing of an amended complaint, a second bench trial of this action commenced on April 9, 1984 and was completed on April 13, 1984. During the course of plaintiff's presentation of evidence at the second trial, plaintiff's attorney sought to introduce into evidence a total of five documents which the Court suppressed, upon objection of defendant's attorney, on the ground that each document had not been previously disclosed to the defendants notwithstanding the fact that plaintiff had been obliged to disclose each pursuant to the Court's May 3, 1983 discovery Order.[1]

After the close of plaintiff's presentation of evidence, defendant's attorney set forth on the record a Rule 37 motion for imposition of sanctions and support therefor. The Court reserved decision on this motion, which defendants renewed following the issuance of the Court's May 25, 1984 Findings and Opinion. Following full briefing on this motion by both sides and a hearing, requested by plaintiff, conducted by the Court on July 9, 1984, the question of imposition of monetary sanctions is now ripe for decision.

### APPLICABLE LAW

Rule 37 sets forth the authority of the federal court to impose sanctions upon a party who has failed to comply with a discovery order:

> *Sanctions by Court in Which Action is Pending.* If a party ... fails to obey an order to provide or permit discovery ..., the court in which the action is pending may make such orders in regard to the

---

**1.** Rule 37, Fed.R.Civ.P. permits the suppression of items offered in evidence as a sanction against a party who has failed to comply with a Court Order directing pretrial disclosures.

failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing or in addition thereto, an order treating as contempt of court the failure to obey any orders...;

*In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.*

Fed.R.Civ.P. 37(b)(2) (emphasis added).

It is pursuant to the last sentence of the above passage that defendant seeks the imposition of monetary sanctions.

▇ The decision whether to impose sanctions under Rule 37 is a matter committed to the informed discretion of the District Court. *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). In the face of increasing abuses of the federal litigation processes, particularly in the area of discovery, Rule 37 was amended in 1970 and 1980 in order to make clear to litigants that attempts to evade the full-disclosure directives of the discovery rules would be met with swift and firm sanctions.

The Advisory Committee on Rules of Civil Procedure, in explaining the basis of the 1970 amendment to Rule 37 which made clear that district courts may impose costs on a disobedient party, stated:

Subdivision (b)(2) is modified to provide for payment of reasonable expenses caused by the failure to obey the order. Although Rules 37(b)(2) and 37(d) have been silent as to award of expenses, courts have nevertheless ordered them on occassion. *The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.* Allocating the burden in this way conforms to the changed provisions as to expenses in Rule 37(a), and is particularly appropriate when a court order is disobeyed.

Fed.R.Civ.P., Advisory Committee Notes, 1970 Amendment (emphasis added).

The Supreme Court has made clear that "[r]ule 37 sanctions must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.' " *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting *National Hockey League*, supra, 427 U.S. at 643, 96 S.Ct. at 2781). Toward this end, "[t]he court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even." 8 C. Wright and A. Miller, *Federal Practice and Procedure* § 2284 (1970).

Courts have recognized that monetary sanctions of the sort sought herein by defendants are the least severe in the arsenal provided under Rule 37, and that therefore conduct need not rise to the level of willfulness before monetary sanctions can be imposed. As stated in *Cine Forty-Second St. Theatre v. Allied Artists*, 602 F.2d 1062, 1066 (2d Cir.1979), the "mildest [sanction] is an order to reimburse the opposing party

for expenses caused by the failure to cooperate."

■ Thus, while a party's failure to comply with a discovery order must be attributable to some fault of that party before any sanctions can be imposed, *Societe Internationale v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095, 2 L.Ed.2d 1255 (1958), gross or even simple negligence on the part of a noncomplying party or its attorney can be sufficient basis for imposition of the less severe sanctions provided under Rule 37. As stated by the Second Circuit in *Allied Artists, supra,* 602 F.2d at 1067, "[n]egligent, no less than intentional, wrongs are fit for deterrence" under Rule 37.

■ The decision of whether or not sanctions should be imposed at all in a case is to be informed by the entire record and history of the case, and among the factors to be considered in making this determination are the importance of the information withheld by the offending party; the offending party's record of cooperation in other respects; whether and in what respects the offending party ultimately produced the information; the extent of prejudice occassioned by the delay in its production; and the public policy aspects of the litigation. *Litton Systems, Inc. v. American Tel. & Tel. Co.,* 91 F.R.D. 574, 576 (S.D.N.Y.1981), *aff'd* 700 F.2d 785 (2d Cir.1983).

■ In light of the text of Rule 37 and the foregoing exposition of the law thereunder, the Court is faced with a three-fold inquiry in deciding whether and in what amount sanctions are to be imposed in the instant case. *First,* the Court must examine the record of the case, including the discovery demand made by defendant and the two Court orders issued, to determine as accurately as possible the exact scope of plaintiff's non-compliance. *Second,* while the Court need not consider the the precise reasons for plaintiff's failures of compliance, it must "determine whether those failures were 'substantially justified' within the meaning of Rule 37." *J.M. Cleminshaw Co. v. City of Norwich,* 93 F.R.D. 338 (D.Conn.1981). *Third,* the Court must make a careful determination, based upon its knowledge and experience of the litigation process, of the additional expenses incurred by defendant as a direct result of such noncompliance as is found. *See Liew v. Breen,* 640 F.2d 1046, 1051 (9th Cir.1981) (record must show a segregation of those costs incurred on account of party's failure to obey Court order).

APPLYING THE LAW TO THE INSTANT CASE

■ In applying the above principles to the instant case, the Court has no doubt that plaintiff, without justification, failed to disclose to defendant certain materials covered by this Court's two discovery orders, and that such nondisclosures caused defendants to bear costs which would not have been necessary had plaintiff provided proper and adequate discovery.

Therefore, defendants are clearly entitled to a monetary award pursuant to the sanction provisions of Rule 37, in addition to the suppression at the second trial of the five previously undisclosed documents offered by plaintiff. However, the degree of inadequacy and delinquency of plaintiff's conduct with respect to discovery, as well as the costs arising therefrom, are not of such substance as to warrant an award of the magnitude claimed by defendants.

With respect to the discovery provided prior to the aborted trial, the Court finds that the failure to disclose the calendar pads was in violation of the first discovery Order and was not "substantially justified." While it may not be possible to scientifically quantify the additional costs necessitated by the mistrial and the need to resume discovery, it is plain that the inefficiencies and inconveniences inherent both in going to trial twice in this matter and in receiving disclosures in a piecemeal fashion caused significant extra costs to defendant.

With respect to the nondisclosures revealed during the second trial, plaintiff took the position that at least some of these resulted from a decision on plaintiff's behalf to resolve a perceived ambiguity in its discovery obligations in favor of nondis-

closure. While this explanation may well show that the nondisclosure of these documents was not a deliberate effort to evade discovery obligations, the proper course for plaintiff would have been, in light of the materiality of the matter withheld and its impact on the claimed liability of the defendant, to refer the question of disclosure to the Court.

In any event, in light of the breadth of the Court's second Order—which called for disclosure by plaintiff of all "documents and files . . . as relate to the subject matter of this action"—there can be no doubt that the failure to disclose these documents, which plaintiff sought to introduce in its case in chief, clearly and unjustifiably violated that Order. Due to the relevance of these suppressed documents to the questions that were tried, there can be no doubt that the failure to disclose them significantly hampered defendant's preparation of this action.

Under all the facts and circumstances made known to the Court during the prolonged pendency of this action and through the briefs and the hearing addressed to the issue of sanctions, the Court concludes that a sanction award of $3500.00 is appropriate and is hereby granted to defendant to be entered at the foot of the judgment.

SO ORDERED.