**CIGNA–INA/AETNA,**
**Defendant-Appellant,**

v.

**HAGERMAN–SHAMBAUGH, Joint Bidders; Hagerman Construction Corporation (Plaintiffs Below); Yaste, Zent & Rye, Inc.; and Gerald A. Dahle (Defendants Below), Appellees.**

No. 3–884A216.

Court of Appeals of Indiana,
Third District.

Feb. 6, 1985.

Robert D. Maas, Stephen E. Arthur, Dutton, Kappes & Overman, Indianapolis, for defendant-appellant.

Edward E. Beck, Shambaugh, Kast, Beck & Williams, John F. Lyons, Barrett, Barrett & McNagny, Fort Wayne, for appellees.

GARRARD, Judge.

On June 24, 1983 Hagerman-Shambaugh, Joint Bidders and Hagerman Construction Company (Hagerman) brought suit against CIGNA–INA/Aetna (CIGNA) in a dispute arising out of an insurance policy issued by CIGNA on water pollution control plant additions Hagerman was constructing in Fort Wayne, Indiana. As part of the construction project, Hagerman installed regulator panels at existing lift stations located around the City of Fort Wayne. On or about March 13, 1982 several of the regulator panels were damaged by flood waters. Hagerman made a claim to CIGNA for $174,729.74 as the cost of repairing the damaged panels but CIGNA denied coverage. This suit followed.

On October 4, 1983 Hagerman filed its request for production of documents and things asking CIGNA to produce, *inter alia*, "3. All memoranda, letters, notes or documents of any nature in possession of the defendant, CIGNA–INA/Aetna as it relates to the claim filed by the plaintiffs which is the subject matter of this lawsuit." CIGNA objected to this request which it thought was unduly burdensome and barred by CIGNA's work product privilege.

After argument on Hagerman's motion to compel discovery, the trial court ordered CIGNA to comply with Hagerman's request providing that CIGNA could submit to the court for *in camera* inspection any

document CIGNA believed to be work product.

CIGNA submitted seven documents from its claims and underwriting files for *in camera* inspection. The next day, the court entered the following order:

"The Court, having examined the documents *in camera* now finds that the documents are relevant to Plaintiff's claim for relief in that they deal with facts and communications involved in the underwriting and coverage determinations of the insurance policy in question.

The Court further finds that the documents do not fall within any attorney client privilege since no attorney is either sender or receiver of the documents in question.

The Court further finds that the documents were not prepared in contemplation of litigation to any greater extent than any loss investigation by an insurance company as an 'eye' toward litigation.

The Court further finds that, although the documents contained conclusion and opinions, such are not barred from discovery in Indiana and in the instant case are directly relevant to Plaintiff's claim for punitive damages.

It is therefore ORDERED that all of the documents submitted *in camera* ... shall be produced for inspection and copying ...."

CIGNA now brings this interlocutory appeal alleging error in the trial court's discovery order. We affirm.

Our resolution of this appeal depends upon the meaning of Indiana Rules of Procedure, Trial Rule 26(B) which provides:

"Unless otherwise ordered by the court in accordance with these rules, the scope of discovery is as follows:

(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

\* \* \* \* \* \*

(3) Trial preparation: Materials. Subject to the provisions of subdivision (B)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (B)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

The trial court concluded that the documents were relevant and were no more prepared in anticipation of litigation than any insurance company's loss investigation. Our review of that conclusion is hampered somewhat by the dearth of Indiana cases interpreting the language of the rule.[1]

---

**1.** Although *Newton v. Yates* (1976), 170 Ind.App. 486, 353 N.E.2d 485 involves issues similar to ours, it provides little or no guidance to us. In that case, an insured requested production of many documents of the insurer including its investigation file. However, with little discussion of the issue of relevancy and no discussion of the meaning of the phrase "prepared in antic-

However, the current version of TR 26(B), amended January 1, 1982, parallels Federal Rule of Civil Procedure 26(b). *See* 2 Harvey, Indiana Practice, Rules of Procedure Annotated, 86 (1984 Supp.) We therefore look to federal court interpretations of the rule to aid our own.

 We begin our discussion of the discoverability of the documents by considering whether the documents were "relevant to the subject-matter" of the action. TR 26(B)(1). Our review of the trial court's conclusion that the documents are relevant is limited. A trial court is vested with discretion in its rulings on discovery issues. *Costanzi v. Ryan* (1978), 175 Ind.App. 257, 370 N.E.2d 1333. We will reverse for an abuse of discretion only if the trial court reached an erroneous conclusion which is clearly against the logic and effect of the facts of the case. *Condon v. Patel* (1984), Ind.App., 459 N.E.2d 1205.

Six of the documents in question are items of interoffice correspondence generated by CIGNA representatives. The other document is a transcription of a telephone conversation between two CIGNA representatives. All of the documents were generated between the dates Hagerman filed its claim and CIGNA denied it. Most of the documents contain opinions and recommendations as to whether coverage extends to Hagerman's claim.

 CIGNA devotes much of its brief to argument that the documents sought by Hagerman would not provide a basis for proving Hagerman's claim against CIGNA. However, relevancy for the purposes of discovery is not the same as relevancy at trial. *Westhemeco, Ltd. v. New Hampshire Insurance Co.* (D.C.N.Y.1979), 82 F.R.D. 702. A document is relevant to discovery if there is the possibility the information sought may be relevant to the subject matter of the action. *Id.* at 709. Given that the purpose of discovery rules is to allow liberal discovery procedures, *Front v. Lane* (1982), Ind.App., 443 N.E.2d

95, we cannot say the court was compelled to find the documents sought by Hagerman had no possible relevance to the subject matter of the claim.

The court also found the documents relevant as to Hagerman's claim for punitive damages. In *Atlanta Coca-Cola Bottling Company v. Transamerica Insurance Company* (N.D.Ga.1972), 61 F.R.D. 115, the insured sought the identity of documents prepared by the insurer in its investigation of the insured's claim. The district court, in ordering the insurer to comply with the request, concluded:

> "The information sought will to some degree demonstrate the thoroughness with which defendant investigated and considered plaintiff's claim and thus is relevant to the question of the good or bad faith of defendant in denying the claim."

61 F.R.D. at 117.

CIGNA takes issue with the view expressed above which appears to allow free discovery of an insurer's investigation file merely upon allegations sufficient to support a punitive damage claim, assuming there is no work product immunity, discussed *infra*. CIGNA argues that such a rule will discourage insurers from conducting full and open investigations of claims for fear that any expression of uncertainty as to coverage will later provide support for those allegations of bad faith.

We believe the cases refute this argument since they demonstrate our resolve to deny awards of punitive damages against insurers who in good faith pay only the amount required under the policy. *Vernon Fire & Casualty Insurance Company v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173. *See also Travelers Indemnity Company v. Armstrong* (1982), Ind., 442 N.E.2d 349 (requiring proof by clear and convincing evidence when punitive damages are sought); *Continental Casualty Company v. Novy* (1982), Ind.App., 437 N.E.2d 1338 (lack of diligent investigation alone is not sufficient to support award of punitive damages).

ipation of litigation," the court affirmed the trial court's exercise of discretion without itself having had the benefit of reviewing the documents sought by the insured.

■ Good faith expressions of uncertainty as to coverage do not provide the basis for punitive damage awards against insurers; bad faith denials of claims may. We do not share CIGNA's fear that an insurer will forgo good faith investigation of a claim, fearing disclosure, when to do so might provide the very inference of bad faith necessary to support an award of punitive damages. The court did not abuse its discretion.

■ Having determined relevance, the court was next required to determine whether TR 26(B)(3) precluded discovery of any of the documents. "[T]he focus of any inquiry into whether the work product immunity applies is whether the materials were prepared 'in anticipation of litigation.'" *Scott Paper Co. v. Ceilcote Co., Inc.,* No. 83–0192P (D.C.Me. Nov. 27, 1984). *See also APL Corporation v. Aetna Casualty & Surety Company* (D.Md.1980), 91 F.R.D. 10; *Thomas Organ Company v. Jadranska Slobodna Plovidba* (N.D.Ill. 1972), 54 F.R.D. 367. The court here concluded essentially that the documents were not prepared in anticipation of litigation and allowed discovery "although the documents contained conclusion and opinions...." TR 26(B)(3) does not protect against the disclosure of a person's mental impressions or conclusions if the documents were not prepared in anticipation of litigation. *See State Farm Fire and Casualty Company v. Perrigan* (D.C.Va. 1984), 102 F.R.D. 235; *Carver v. Allstate Insurance Company* (S.D.Ga.1982), 94 F.R.D. 131; *Fontaine v. Sunflower Beef Carrier, Inc.* (E.D.Mo.1980), 87 F.R.D. 89; *Thomas Organ, supra.* If the documents here were not prepared in anticipation of litigation then they are freely discoverable, including the mental impressions, conclusions and opinions of the preparer. If the documents were prepared in anticipation of litigation, then they are discoverable "only upon a showing that the party seeking discovery has substantial need of the material ... and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." TR 26(B)(3). Even upon such a showing, "the court shall protect against disclosure of the [preparer's] mental impressions, conclusions, opinions or legal theories...." TR 26(B)(3). *See also Carver v. Allstate, supra; APL Corporation v. Aetna, supra.*

■ A useful beginning to our discussion of this issue comes from *In re Grand Jury Investigation* (3d Cir.1979), 599 F.2d 1224 where Chief Judge Seitz wrote:

"Indisputably, the work-product doctrine extends to material prepared or collected before litigation actually commences. On the other hand, some possibility of litigation must exist. Courts and commentators have offered a variety of formulas for the necessary nexus between the creation of the material and the prospect of litigation. *See, e.g., Home Insurance Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga.1977) (must be a 'substantial probability that litigation will occur and that commencement of such litigation is imminent'); *In re Grand Jury Investigation, supra* [412 F.Supp. 943] at 948 (threat of litigation must be 'real and imminent'); *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 47 F.R.D. 334, 337 (S.D.N.Y.1969) (prospect of litigation must be 'identifiable'); 4 Moore's Federal Practice Sec. 26.63[2.–1], at 26–349 (1970) (litigation must 'reasonably have been anticipated or apprehended'). Professors Miller and Wright offer an attractive formulation based on the purpose of the work-product doctrine itself:

'Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation.'

8 Wright & Miller, Federal Practice and Procedure: Civil Section 2024, at 198 (1970) (emphasis added; footnote omitted)."

599 F.2d at 1229. *See also Carver, supra.* "[T]here is no work product immunity for

documents prepared in the regular course of business rather than for purposes of the litigation." 8 Wright & Miller, Federal Practice and Procedure, Section 2024 (1970). *See also Galambus v. Consolidated Freightways Corporation* (N.D.Ind. 1974), 64 F.R.D. 468 (restating Wright & Miller); *Matter of Snyder* (1981), Ind.App., 418 N.E.2d 1171 (quoting from *Galambus*).

Distinguishing documents prepared for litigation from those prepared in the ordinary course of business is especially difficult in cases involving insurance companies "because it is the ordinary course of business for an insurance company to investigate a claim with an eye toward litigation." *Carver, supra* at 134.

"Courts, however, have found a solution to this dilemma in the very means by which an insurance company conducts its business. In the early stages of claims investigation, management is primarily concerned not with the contingency of litigation, but with 'deciding whether to resist the claim, to reimburse the insured and seek subrogation of the insured's claim against the third party, or to reimburse the insured and forget about the claim thereafter.' *Thomas Organ Co. v. Jadranska Slobodna Plovidba, supra,* 54 F.R.D. at 373. At some point, however, an insurance company's activity shifts from mere claims evaluation to a strong anticipation of litigation. *See Westhemeco Ltd. v. New Hampshire Ins. Co., supra,* 82 F.R.D. [702] at 708. This is the point where the probability of litigating the claim is substantial and imminent. *See APL Corp. v. Aetna Cas. & Sur. Co.,* 91 F.R.D. 10, 21 (D.Md.1980); *Miles v. Bell Helicopter Co., supra,* 385 F.Supp. [1029] at 1033. The point is not fixed, it varies depending on the nature of the claim, and the type of investigation conducted. *See Westhemeco Ltd. v. New Hampshire Ins. Co., supra,* 82 F.R.D. at 708. The decision whether insurance company investigatory documents were 'prepared in anticipation of litigation' turns, therefore, on the facts of each case."

*Id. Compare* cases concluding that, in the context of insurance investigations, the anticipation of litigation necessarily begins with the filing of a claim. *Fontaine v. Sunflower Beef Carrier, Inc.* (E.D.Mo. 1980), 87 F.R.D. 89; *Almaguer v. Chicago, Rock Island & Pacific Railroad Co.* (D.Neb.1972), 55 F.R.D. 147; *Fireman's Fund Insurance Company v. McAlpine* (1978), 120 R.I. 744, 391 A.2d 84.

▮ We choose to follow the reasoning in *Carver* that there is a point after the filing of a claim when an insurance investigation shifts from mere claim evaluation to anticipation of litigation. Reviewing the facts of cases following the same rule will better enable us to evaluate the court's exercise of discretion here.

In *APL Corporation v. Aetna Casualty & Surety Company* (D.Md.1980), 91 F.R.D. 10 the insured requested the production of all documents in the insurer's investigation file concerning the insured's claim on a policy covering employee theft. Included in the file were reports of the investigator's meeting with the insured, his interviews of employees of the insured including those implicated in the thefts, and his discussions with his superiors as to the merits of the claim. Also included were three reports from the investigator to the insurer's home office. The district court concluded the investigative materials were not prepared in anticipation of litigation. The court notes "that an insurance company must, in the ordinary course of its business, investigate *and evaluate* a policyholder's claim to determine whether or not to indemnify the alleged loss." 91 F.R.D. at 20 (our emphasis). It was not until after that investigation and the resulting denial of the claim that the substantial probability of litigation arose. *Id.* at 21.

In *State Farm Fire and Casualty Company v. Perrigan* (D.Va.1984), 102 F.R.D. 235, the insurer's claim representative prepared a report concerning a fire loss. In the report, the representative expressed his opinion and speculation about the cause and origin of the fire. He further recommended action for the insurer to take. The

district court concluded the report was discoverable, relying on the following factors: The representative prepared the report in the ordinary course of investigating the fire; State Farm had not yet decided whether to pay the claim; the probability of litigation was neither substantial nor imminent.

In *Fine v. Bellefonte Underwriters Insurance Co.* (S.D.N.Y.1981), 91 F.R.D. 420, the insured sought discovery of reports prepared by investigators retained by the insurer. The district court ordered production of the documents which it felt "were produced in the ordinary course [of business], and not pursuant to a clear decision, based on substantial bona fide reasons, to reject the claim and to litigate." 91 F.R.D. at 423. The insurer had failed to demonstrate that the documents were prepared for a purpose other than "a more or less routine investigation of a possibly resistable claim...." *Id.*

*Carver v. Allstate Insurance Company* (S.D.Ga.1982), 94 F.R.D. 131 involved a claim on a fire loss. In *Carver*, the insured sought the production of documents prepared by two of the insurer's claims investigators. The court ordered the production of the reports prepared by the first investigator who conducted a routine preliminary investigation. However, the second investigation was conducted after Allstate was alerted to the possibility of arson, a factor which, in the court's view, raised the substantial likelihood that litigation would ensue. The court concluded that the second investigation proceeded in anticipation of litigation and that the documents prepared in that investigation were not subject to discovery without the additional showing required by TR 26(B)(3).

■ Our affirmance of the trial court's order compelling production of these documents follows as much from our standard of review as from analogy to the cases reviewed above. The trial court did not abuse its discretion. As in *APL Corporation v. Aetna, supra,* the court could have found that the documents prepared by CIG-

NA were part of its evaluation of Hagerman's claim leading up to its payment or denial of the claim. As the court noted, there was no indication the documents were prepared in anticipation of litigation to any greater extent than any insurance company recognizes the possibility of litigation whenever a claim is filed. The probability of litigating the claim was not substantial and imminent.

■ We decline to follow the cases cited by CIGNA supporting the position that all documents prepared by an insurer after a claim is filed are prepared in anticipation of litigation. *See Fontaine, supra; Almaguer, supra; Fireman's Fund, supra.* Application of such a rule would give insurance companies protection from discovery not enjoyed by any other party.

"The logical absurdity of the [insurer's] position is that, under its theory, the amendments to the discovery rules which were believed to be a liberalization of the scope of discovery would be a foreclosure of discovery of almost all internal documents of insurance companies relating to the claims of insureds. We do not believe that Rule 26(b)(3) was designed to so insulate insurance companies merely because they always deal with potential claims. If this were true, they would be relieved of a substantial portion of the obligations of discovery imposed on parties generally that are designed to insure that the fact finding process does not become reduced to gamesmanship that rewards parties for hiding or obscuring potentially significant facts."

*Thomas Organ Company v. Jadranska Slobodna Plovidba* (N.D.Ill.1972), 54 F.R.D. 367, 373.[2] *See also Atlanta Coca-Cola Bottling Company v. Transamerica Insurance Company* (N.D.Ga.1972), 61 F.R.D. 115.

■ The trial court's order finds additional support in the nature of the work product immunity itself which arose as "the embodiment of a policy that a lawyer doing a lawyer's work in preparation of a case for trial should not be hampered by

**2.** CIGNA attacks the contents of this quote by citing and quoting from cases and commentators critical of *Thomas Organ.* However, the criticism of *Thomas Organ* was directed not at

the knowledge that he might be called upon at any time to hand over the result of his work to an opponent." *Duplan Corporation v. Moulinage et Retorderie de Chavanoz* (4th Cir.1973), 487 F.2d 480, 483. Although TR 26(B)(3) clearly extends this work product immunity to documents prepared not only by attorneys but also by or for a representative of a party, including his agent, *APL Corporation v. Aetna, supra,* we should not forget the historical limitation of that immunity to work done in anticipation of litigation.

Finding no error, we affirm.

STATON, P.J., and HOFFMAN, J., concur.

the above quote but at an earlier conclusion in that case that:

"... any report or statement made by or to a party's agent (other than to an attorney acting in the role of counsellor), which has not been requested by nor prepared for an attorney nor which otherwise reflects the employment of an attorney's legal expertise must be conclusively presumed to have been made in the ordinary course of business and thus not within the purview of the limited privilege of new Rule 26(b)(3) and (b)(4)."

54 F.R.D. at 372. We also believe this conclusion of the *Thomas Organ* court is contrary to the clear wording of TR 26(B)(3). However, this criticism does not detract from the strength of that court's subsequent analysis of the inequity of allowing an insurance company blanket protection against discovery requests.