DeMOSS REXALL DRUGS, Robert Malcolm, Appellants,

v.

Barbara DOBSON, James Dobson, Appellees.

No. 26A01–8903–CV–104.

Court of Appeals of Indiana, First District.

July 10, 1989.

David L. Clark, Kahn, Dees, Donovan & Kahn, Evansville, for appellants.

Gary Brock, Vincennes, for appellees.

ROBERTSON, Judge.

The primary issue we consider in this appeal is whether certain recorded statements taken from representatives of the appellants, DeMoss Rexall Drugs and pharmacist Robert Malcolm (collectively referred to as DeMoss) by DeMoss's insurance carrier are discoverable pursuant to Ind.Rules of Procedure, Trial Rule 26(B).

We affirm the trial court's ruling in favor of discovery.

The appellees, Barbara and James Dobson, alleged in their complaint against DeMoss that on August 14, 1987, Barbara Dobson went to DeMoss to have a prescription for Snythroid filled but the pharmacist gave her Catapres instead. Dobson began experiencing pain and numbness about the jaw and face, consulted a dentist, and discovered that her thyroid level was low. An examination of the medication remaining in the bottle revealed the pharmacy's error.

DeMoss reported the claim to its insurer, Farm Bureau Insurance, on Friday, September 25, 1987. The following Monday, Farm Bureau's claims representative conferred with his supervisor by telephone, advising that they had a potentially difficult claim coming into the office. The claims representative recalled a claim involving Barbara Dobson four to five years earlier and knew that James Dobson had pursued a claim against his employer. Less than two weeks later, on October 5 and 6, 1987, the claims representative obtained the recorded statements which are the subject of this litigation.

Interestingly enough, DeMoss attached the affidavits supplied in opposition to the Dobson's motion to compel production for in camera inspection the impressions of Farm Bureau's claims representative contained in his initial report. Among other things, the claims representative noted that the claim "will probably end up being a Tuffy;" that according to the pharmacists, Dobson should have known the difference by shape, size, and color; that DeMoss did not know for sure which of four physicians "dispensed" the drug or whether the prescribing physician's initials had been changed in the computer; and, that the claims representative had "this clmt. on a B.I. about 4–5 years ago and Big Problems. Also her husband at that time had a huge claim against his employer. Train ran over his foot and Big Toe." The report also contained the notation "on Dr. Paine's bill—R/O: means rule out Multiple Sclerosis." The Dobsons filed their complaint on April 26, 1988.

■ We apply an abuse of discretion standard when reviewing trial court rulings on discovery issues. *Cigna–INA/Aetna v. Hagerman–Shambaugh* (1985), Ind.App., 473 N.E.2d 1033, 1036, *trans. denied.* An abuse of discretion occurs when the trial court reaches a conclusion against the logic and natural inferences to be drawn from the facts of the case. *Kaufmann v. Credithrift Financial, Inc.* (1984), Ind.App., 465 N.E.2d 207, 210.

As we read DeMoss's argument, DeMoss is challenging the trial court's determination that the statements are discoverable on two bases: (1) that the evidence before the trial court leads solely to the conclusion that the statements constituted work product prepared in anticipation of litigation and not discoverable by reason of T.R. 26(B)(3); and, (2) due to the fact that the statements are those of an insured to insur-

er, this court should afford them the special protection of a privileged communication, rendering them completely undiscoverable by virtue of T.R. 26(B)(1). We will address DeMoss's latter contention first.

■ Cognizant that evidentiary privileges frustrate the factfinding process by foreclosing the consideration of relevant and material information, the courts of this state have repeatedly and consistently left to the legislature the determination of whether a particular interest is of sufficient importance to society to justify the protection afforded privileged communications and the scope of the protection to be accorded. *See Matter of L.J.M.* (1985), Ind. App., 473 N.E.2d 637 (urging caseworker-client privilege); *Massey v. State* (1978), 267 Ind. 504, 371 N.E.2d 703 (probation officer-juvenile); *Cissna v. State* (1976), 170 Ind.App. 437, 352 N.E.2d 793, *trans. denied* (parent-child); *also, Ernst & Ernst v. Underwriters National Assurance Co.* (1978), 178 Ind.App. 77, 381 N.E.2d 897, *trans. denied* (scope of accountant's statutory privilege); *Canfield v. Sandock* (1988), Ind.App., 521 N.E.2d 704, *trans. pending* (physician-patient); *Terre Haute Regional Hospital v. Basden* (1988), Ind. App., 524 N.E.2d 1306 (communications to peer review committee). As this district noted in *Scroggins v. Uniden Corp. of America* (1987), Ind.App., 506 N.E.2d 83, 86, *trans. denied* when urged to recognize a privilege against the production of self-critical analysis, all privileges are statutory in nature in Indiana and their creation is solely the prerogative of the legislature. For that reason and notwithstanding *obiter dictum* that there may be policy considerations favoring an evidentiary exclusionary rule for communications between an insured and his insurer, *see, Snodgrass v. Baize* (1980), Ind.App., 405 N.E.2d 48, 54, it is this court's inclination to leave the deter-mination of this state's public policy with respect to an insurer-insured privilege to the General Assembly.[1] The trial court was correct in deferring to the legislature as well.

■ Having noted that the materials at issue are not privileged, we may turn our attention to the meaning of the phrase "prepared in anticipation of litigation," the prerequisite for work product protection under T.R. 26(B)(3). Four years ago, in *Cigna–INA/Aetna v. Hagerman–Shambaugh, supra,* this court first addressed the language of T.R. 26(B)(3) as it applies to documents and materials generated by an insurance company. Acknowledging that the difficulty posed in the insurance industry context was in discerning documents prepared by an insurer "in anticipation of litigation" from those prepared in the routine course of the business of investigating and evaluating claims, we adopted the reasoning of those decisions such as *Carver v. Allstate Ins. Co.* (S.D.Ga.1982), 94 F.R.D. 131 which recognize that there is a point after the filing of a claim when an insurance investigation shifts from mere claim evaluation to anticipation of litigation.

Were we to adopt the position espoused by DeMoss and accord all documents prepared by insurers immunity from discovery, we would uproot the work product privilege from its very purpose. The United States Supreme Court formulated the work product doctrine as a means of insuring the fullest possible knowledge of the issues and facts involved in a case without sacrificing the "wits" of attorneys actively engaged in the process of preparing for litigation. *See, Hickman v. Taylor* (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. Hence, the doctrine identifies that portion of the materials created or collected by an

---

**1.** The dissent in *State ex rel. Cain v. Barber* (1976), Mo., 540 S.W.2d 50 cited by this court in *Snodgrass v. Baize,* 405 N.E.2d at 54 utilizes Wigmore's four conditions common to those privileges traditionally recognized at common law to conclude that the creation of an insurer-insured privilege is unwarranted.

In addition to an insurer-insured privilege, some jurisdictions have protected insurer-in-sured communications by legal fiction, extending the attorney-client relationship to incorporate communications to an insurer, even where no attorney-client relationship has yet been formed. *See, e.g., State ex rel. Cain v. Barber, supra; Martin v. Clark* (1980), 92 Ill.App.3d 518, 47 Ill.Dec. 305, 415 N.E.2d 30; *Asbury v. Beerbower* (1979), Ky., 589 S.W.2d 216; *Grand Union Co. v. Patrick* (1971), 247 So.2d 474, 475.

attorney on behalf of the client containing facts which are privileged from disclosure to opposing counsel and client, by drawing a line at the point at which the attorney's purpose becomes one of preparation for litigation. Facts contained in these materials become discoverable only upon a showing of need and unavailability, but facts within the attorney's possession obtained under circumstances other than in anticipation of litigation are freely discoverable. An attorney's mental impressions, conclusions, opinions or legal theories remain protected despite a showing of need and unavailability. Clearly, by urging the position of those courts which have protected all documents routinely prepared by an insurer in the process of evaluating a claim, DeMoss is seeking immunity from discovery without qualification, broader than that granted attorneys under similar circumstances.

■ Accordingly, we reaffirm that pronounced in *Cigna–INA/Aetna, supra,* that in the context of insurance investigations there is a point at which the focus of an insurer's work turns from evaluation of a claim to litigation preparedness.[2] A document generated or obtained by an insurer is entitled to the protection from discovery found in T.R. 26(B)(3) if the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation and not, even though litigation may already be a prospect, because it was generated as part of the company's regular operating procedure. *See, Cigna–INA/Aetna, supra; American Buildings Co. v. Kokomo Grain Co., Inc.* (1987), Ind.App., 506 N.E.2d 56, 62, *trans. denied; Carver, supra,* 94 F.R.D. at 134, all citing 8 Wright & Miller, Federal Practice and Procedure: Civil § 2024 (1970). What remains for our determination, then, is the question whether the trial court's ruling that the statements obtained by Farm Bu-

reau cannot fairly be said to have been acquired because of the prospect of litigation, is, as DeMoss argues, clearly against the logic and effect of the facts and circumstances of the case. We conclude that it is not.

As we noted earlier, Farm Bureau obtained the statements from Jacob DeMoss, Steve Collins, Robert Malcolm and Robert DeWig less than two weeks after having been informed of the claim. According to the record, at that point there had been only internal discussions about the claim and research about the effects of the medication allegedly given. An investigation of the factual basis of the claim commenced with the statements and initial report of the claims representative to his superior. There is no indication in the record that Farm Bureau had decided to refuse to pay the claim. The logical inference from the evidence is that the statements were taken for purposes of exploring the validity of the claim and to enable Farm Bureau to make an initial determination of its position with respect to the claim.

DeMoss argues that the trial court's ruling shows the court ignored the sworn testimony of Farm Bureau's claims representative and his immediate superior, each expressing the belief that given the Dobsons's claims history and DeMoss's understanding of the claim (that the mix-up in medication may have caused Barbara Dobson to develop multiple sclerosis), the matter would likely end up in litigation. Even if the trial court accepted these affirmations as true, this evidence does not alter the character of the statements as a tool in the initial investigation of the claim or establish that the statements were intended for purposes other than routine claims investigation and evaluation. We do not dispute DeMoss's assertion that insurance people can sometimes recognize a claim that will lead to litigation merely by being

2. DeMoss suggests that *Cigna–INA/Aetna, supra* and *American Buildings Co. v. Kokomo Grain Co., Inc.* (1987), Ind.App., 506 N.E.2d 56 can be distinguished because those cases involved other types of investigatory materials, not the statements of witnesses. We would reiterate that our T.R. 26(B)(3) embodies the work product rule essentially as it was pronounced in *Hickman v. Taylor* (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, a case involving oral and written statements of witnesses secured by adverse counsel in the course of preparation for possible litigation.

advised of the general claim and the parties involved. But the work product doctrine demands more than just a recognition that a claim will eventually lead to litigation; it requires evidence supporting the conclusion that the insurer is actively working based upon the premise that the claim will lead to litigation and has obtained the statements at issue in furtherance of that purpose.

Given the evidence before the court, we cannot say that the trial court's ruling permitting discovery constituted an abuse of discretion. The judgment of the trial court is therefore affirmed.

BAKER and CHEZEM, JJ., concur.