INDIANA STATE BOARD OF PUBLIC WELFARE, Indiana Department of Public Welfare, Suzanne Magnant, in her capacity as Administrator of Indiana Department of Public Welfare, Appellants–Defendants,

v.

TIOGA PINES LIVING CENTER, INC. Communicare of Indiana, Inc., d/b/a American Village Retirement Community, Bloomington Convalescent Center, Inc., Meadow Heights Nursing Center, Inc., d/b/a Lincoln Hills of New Albany, Appellees–Plaintiffs.

No. 30A01–9105–CV–158.

Court of Appeals of Indiana,
First District.

June 10, 1992.

Rehearing Denied Aug. 11, 1992.

Linley E. Pearson, Atty. Gen. of Indiana, Gordon E. White, Jr., Deputy Atty. Gen., Indianapolis, and Charles A. Miller, S. William Livingston, Jr. and Mark H. Lynch, Covington & Burling, Washington, D.C., for appellants-defendants.

David F. McNamar, Randall R. Fearnow, Steers, Sullivan, McNamar & Rogers; Paul R. Black, Indianapolis; Michael J. Tosick, Greenfield; and Malcolm J. Harkins, III, Mark J. Biros and David M. Levine, Casson & Harkins, Washington, D.C., for appellees-plaintiffs.

ROBERTSON, Judge.

The issue we consider in this interlocutory appeal is whether computer simulations reflecting possible Medicaid reimbursement methodologies, that were considered but not adopted by the Indiana Department of Public Welfare (State) at a time when litigation had already commenced on the reimbursement scheme then in effect, are protected from discovery either as work product or by reason of a deliberative process privilege. The trial court ordered the State to comply with the plaintiff-class of long term health care facilities' request for discovery of the simulations, identified as Models 1 through 10 of the Proposed Rate Setting Criteria and State Plan. The case presents a close question; it is our conclusion, however, that the models constitute work product and possess a nearly absolute immunity from discovery. Accordingly, we reverse.

A brief synopsis of the procedural history of the entire cause is necessary to an understanding of the context in which the present discovery request arose. The plaintiff nursing homes brought this action against the Department of Public Welfare in January, 1990, claiming that the State's Medicaid reimbursement plan, which had been in effect, at least in part, since 1983, was unlawful. See generally, *Indiana*

*State Board of Public Welfare v. Tioga Pines Living Center, Inc.* (1991), Ind.App., 575 N.E.2d 303, *trans. denied.* The class' challenge to the existing state plan went to trial in February and March of 1991 in Hancock County. The trial court entered a general judgment on this portion of the litigation on September 19, 1991; that judgment became a partial final judgment on March 25, 1992. On February 26, 1991, after the trial of those initial allegations had begun but had not yet been completed, the State attempted to promulgate a new reimbursement scheme. The class immediately sought an injunction to prevent the implementation of the proposed plan and supplemented its complaint with a challenge to the newly-devised scheme.

In the course of discovery, the class deposed Agnes Davidson, a consultant who was hired by the State "to analyze the rates—issues related to the nursing home rate-setting system in Indiana for the purposes of defending the state in [the] pending litigation" brought by Tioga Pines. (R. 35, 38). Davidson refused to respond to certain questions concerning her project with the State on the grounds that the responses were protected by privilege or constituted work product which was not discoverable. The trial court refused to compel Davidson to respond to the class' inquiries; and, despite repeated attempts by class counsel during Davidson's deposition to establish exactly what it was that was produced by Davidson in fulfilling her contract, the class was not permitted by the State to identify the content of Davidson's written work product beyond some personal notes and some documents identified as "presentation materials."

That portion of Davidson's deposition testimony included in the record indicates that, in fulfilling her contract, Davidson met with a number of state officials, consultants and attorneys, including David Hamilton, legal counsel to the Governor, and Keenan Buoy of Myers & Stauffer, the State's contract rate-setter. There is no testimony in the record that Davidson produced the models in question or any portion of the information contained in them in her capacity as a consultant retained to help

the State defend against the pending litigation. Davidson does say however that "there were analyses performed during my project this summer about alternative rate setting methodologies and *as part of that* the current system was analyzed ..."

■ This court applies an abuse of discretion standard when it reviews discovery rulings. *See Canfield v. Sandock* (1990), Ind., 563 N.E.2d 526, 530; *Richey v. Chappell* (1991), Ind.App., 572 N.E.2d 1338, 1339. This court will reverse only where the trial court has reached an erroneous conclusion which is clearly against the logic and effect of the facts of the case. *Cigna–Ina/Aetna v. Hagerman–Shambaugh* (1985), Ind.App., 473 N.E.2d 1033, 1037, *trans. denied.*

■ Determining whether a document constitutes work product within the meaning of Ind.Trial Rule 26(B)(3) is often a difficult process. Analysis begins with the trial rule which permits "discovery of documents and tangible things otherwise discoverable under subdivision (B)(1) of th[e rule] and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, ...)"[1] only upon a showing of substantial need of the materials in the preparation of the case and that the substantial equivalent of the materials cannot be obtained by other means without undue hardship. Trial Rule 26(B)(3) dictates that the focal point of our inquiry into whether work product immunity attaches to the models in question be upon whether the materials were prepared "for trial." *See Cigna–Ina/Aetna,* 473 N.E.2d at 1037.

A number of this court's decisions have given meaning to the work product doctrine in the "anticipation of litigation" con-

text, that is, in situations where materials were prepared or collected before litigation had formally commenced. *See e.g. Burr v. United Farm Bureau Mutual Ins. Co.* (1990), Ind.App., 560 N.E.2d 1250, *trans. denied; American Buildings Co. v. Kokomo Grain Co.* (1987), Ind.App., 506 N.E.2d 56, *trans. denied; Cigna–Ina/Aetna,* 473 N.E.2d 1033. On those occasions, we have identified one appropriate test of the "prepared in anticipation of litigation" requirement as being that proposed by Professors Wright and Miller: whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of the prospect of litigation.* *Burr,* 560 N.E.2d at 1254; *Kokomo Grain,* 506 N.E.2d at 62; *Cigna–Ina/Aetna,* 473 N.E.2d at 1037 (all citing or quoting 8 Wright & Miller, Federal Practice and Procedure: Civil § 2024 at 198 (1970)). Applying this same test, the State argues that because the models were developed as a consequence of and in response to the litigation with Tioga Pines, they are protected from discovery.

■ We do not perceive the scope of work product immunity to be as extensive as the State envisions. The parameters of immunity are explicitly set by the trial rule itself which limits protection to documents prepared in anticipation of litigation *or for trial.* The policy behind the rule of *Hickman v. Taylor* (1947), 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and its progeny, now codified in Fed.R.Civ.P. 26(b)(3), the federal counterpart to our own trial rule, is to protect the integrity of the adversary process, not to protect all recorded opinions, observations and impressions an attorney or his advisors have made in connection with a legal problem. *Coastal Corp. v. Duncan* (D.Del., 1980), 86 F.R.D. 514,

---

1. Under T.R. 26(B)(3), which is derived from the federal rule and the work product doctrine developed in the federal courts, *American Buildings Co. v. Kokomo Grain Co.* (1987), Ind.App., 506 N.E.2d 56, 58, *trans. denied; Newton v. Yates* (1976), 170 Ind.App. 486, 353 N.E.2d 485, 490, it is not necessary that the document be prepared by an attorney in order for immunity to apply. Protection extends to trial preparation materials created by agents of attorneys

and consultant advisors as well as information gathered with an eye toward litigation by the client himself. *Id.; Kokomo Grain,* 506 N.E.2d at 61. The fact that the models in question were prepared by someone other than the State's trial counsel is therefore not an impediment to the State's assertion of work product protection, provided the simulations can be said to have been prepared in anticipation of litigation or for trial.

522. Documents are work product because their subject matter relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved. 4 Moore's Federal Practice § 26.64[1] at 26–349 (1970).

 Therefore, the primary motivating purpose behind the creation of the document must be to aid in trial preparation. *United States v. Gulf Oil Corp.* (Temp. Emer.Ct.App., 1985), 760 F.2d 292, 296. Materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not entitled to the qualified immunity provided by this section. Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules, 48 F.R.D. 487, 501. *Accord State v. Hogan* (1992), Ind.App., 588 N.E.2d 560, *trans. pending; DeMoss Rexall Drugs v. Dobson* (1989), Ind.App., 540 N.E.2d 655; *Cigna–Ina/Aetna,* 473 N.E.2d at 1037–38. Acts performed by a public employee in the performance of his officials duties are not "prepared in anticipation of litigation or for trial" merely by virtue of the fact that they are likely to be the subject of later litigation. *See Hogan,* 588 N.E.2d 560; *Grossman v. Schwarz* (S.D.N.Y., 1989), 125 F.R.D. 376, 388. And, the mere fact that a public official is also a lawyer does not render all of his official acts work product. *Id.* at 389.

Hence, there is a subtle distinction between materials prepared in response to or as a consequence of an important event and materials prepared as an aid to litigation. *Scott Paper Co. v. Ceilcote Co.* (D.Me, 1984), 103 F.R.D. 591, 594. If the task force's primary purpose in creating the models in this case was to determine what the problems were with the present system and how they could be resolved, the models are discoverable. On the other hand, if the evidence discloses that the primary motivating purpose of the simulations was to assist State officials in the pending litigation, the documents enjoy work product protection.

 Davidson's testimony that she was employed by State officials to assist them in defending the present system, that alternative rate-setting methodologies were created as part of her project, and that from those methodologies the current system was analyzed establishes that the primary purpose of State officials in creating the alternative methodologies *at that time* was to aid in the ongoing litigation with Tioga Pines and not as part of the routine business of devising a new state plan for Medicaid reimbursement. We emphasize that it is not the fact that litigation had commenced nor that the documents were gathered for or channeled through the governor's attorney or his task force which shields them from discovery, but their creation as a means of analyzing and advising State officials on the present system for purposes of defending the ongoing litigation which makes them work product. *Cf. Santiago v. Miles* (W.D.N.Y., 1988), 121 F.R.D. 636 (Computer printouts containing statistical analysis of disparity in job assignments and raw data pertaining to ethnic distribution of inmates in preferred assignments, created for counsel to corrections department after civil rights lawsuit began, who met with correction officials to discuss action, relevant case law, and "the data" considered necessary, not discoverable).[2] The trial court's ruling that the

---

**2.** The class maintains that the trial court's ruling can be upheld because the State did not present the models for an in camera inspection by the trial court, itemize them or present a factual summary of their contents. See e.g. *Burr,* 560 N.E.2d at 1255. While some discovery requests may be so onerous and burdensome to review without an in camera inspection and assistance from the party seeking protection from discovery, to insist on that process in the present case would be contrary to the logic and effect of the facts and circumstances before the court.

The class did not seek Davidson's "presentation materials" but the alternative reimbursement models to which she referred during her deposition. While the models themselves are described as voluminous, they are a set of substantially similar materials for which the State has asserted a single set of facts justifying its work product immunity claim. There is no dispute over what is involved. Production for an in camera inspection should remain a rare practice. *Canfield v. Sandock* (1990), Ind., 563

models are discoverable is clearly against the logic and effect of the facts before the court.

Documents prepared for trial are discoverable "only upon a showing that the party seeking discovery has substantial need of the material ... and that he is unable without undue·hardship to obtain the substantial equivalent of the materials by other means." T.R. 26(B)(3). Even upon such a showing, "the court shall protect against disclosure of the [preparer's] mental impressions, conclusions, opinions or legal theories ..." *Id.; Cigna–Ina/Aetna*, 473 N.E.2d at 1037. The class does not hide the fact that what it seeks is access to the very mental impressions of State officials reflected in the models which are protected by the work product rule, not the statistical information contained in them. Of course, as in every case, the models themselves are the only known written source of the preparer's impressions of the reimbursement system. While it has not been decided whether materials of this type are always protected by the work product rule, a far stronger showing of necessity and unavailability by other means than is ordinarily made would be necessary to compel disclosure. *Upjohn Co. v. United States* (1981), 449 U.S. 383, 402–3, 101 S.Ct. 677, 689, 66 L.Ed.2d 584. The class' assertion that the models constitute its only source, while true, clearly will not suffice.

Judgment reversed.

RATLIFF, C.J., and HOFFMAN, J., concur.

N.E.2d 526, 531 (quoting *Newton v. Yates,* 170 Ind.App. at 493–4, 353 N.E.2d at 490).