John QUADROZZI, et al., Plaintiffs,

v.

The CITY OF NEW YORK, et al., Defendants.

The CITY OF NEW YORK, Counterclaim and Third–Plaintiff,

v.

John QUADROZZI, et al., Counterclaim Defendants

and

Edward J. Halloran, et al., Third–Party Defendants.

No. 86 Civ. 9491 (JMW).

United States District Court, S.D. New York.

July 17, 1989.

Michael Barron, Fredrika V. Miller, Corp. Counsel of the City of New York, New York City, for defendants.

Gerald Walpin, Steven S. Miller, Barry Michael Okun, Robert A. Saperstein, New York City, for plaintiffs.

## OPINION AND ORDER

WALKER, District Judge:

The City of New York (the "City") seeks sanctions against plaintiffs, John Quadrozzi and other ready-mix concrete producers (collectively, "clients"), their attorneys, Gerald Walpin ("Walpin") and Alexander A. Miuccio ("Miuccio"), and their respective firms, Rosenman & Colin and Altieri, Kushman, Miuccio & Frind (collectively, "counsel"). This Court dismissed plaintiffs' substantive antitrust claims with prejudice in March, 1988. The City now argues that dismissal with prejudice is an insufficient response to plaintiffs' dilatory conduct and moves for monetary sanctions pursuant to Fed.R.Civ.P. 11 and 37(b), the common law and 28 U.S.C. § 1927. In sum, the City alleges that the initial antitrust action was brought and continued in bad faith and that plaintiffs abused the judicial process by repeatedly failing to comply with this Court's discovery orders. The City seeks reimbursement for attorneys' fees for the entire proceeding in the sum of $227,-497.50. For the reasons stated below, the City's motion is granted in part and denied in part.

## I. BACKGROUND

The instant sanctions motion demands an understanding of the history of this prolonged and contentious litigation. Emphasis is placed upon the discovery disputes which lie at the heart of the City's motion for sanctions.

On August 20, 1986, the City entered into a requirements contract (the "contract") with West 57th Street Corporation ("West 57th") and Mustapha Ally ("Ally") (collectively, "the defendants"). The contract required the City to provide a site for West 57th and its principal, Ally, to build a

cement batching plant, in return for which West 57th would provide the City with all of the City's cement needs at a set price for a period of five years. Additionally, the contract permitted West 57th to sell excess capacity cement to private contractors at prices not exceeding those charged to the City.

On December 11, 1986, plaintiffs commenced an antitrust suit before this Court alleging, *inter alia*, that the contract amounted to an unlawful agreement to fix prices and a conspiracy to monopolize. Plaintiffs alleged violations of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and section 3 of the Clayton Act, 15 U.S.C. § 14. At the same time, plaintiffs also instituted a parallel Article 78 proceeding in state court. Both the federal and state actions challenged the validity of the contract and sought to enjoin the construction and operation of the concrete plant.

## A. The State Court Action

The plaintiffs' Article 78 proceeding alleged that the City was acting beyond the scope of its authority in violation of the New York City Charter and the State Constitution. The New York State Supreme Court initially denied a temporary restraining order "as not being in the best public interest." *John Quadrozzi, et al., v. The City of New York, et al,* Index No. 28421/86, at 2 (April 15, 1987).

On April 15, 1987, the state Court dismissed plaintiffs' motion for a temporary injunction and granted defendants' cross-motion for dismissal for insufficiency. The court found that the contract was not illegal under any public law provisions. Moreover, the court found that there was sufficient evidence for the City to believe that the ready-mix concrete industry in New York was underworld controlled and was itself guilty of monopolistic practices.

The court then concluded that the City had a "duty ... to take action" and that it was proper for the City's Office of Economic Development to determine that the creation of an independent concrete plant would enhance the economic well-being of the City by supplying the City and the private sector with concrete at fair market rates. Tr. April 15, 1987, at 7.[1]

The state court also noted, in dicta, that it was reasonable to doubt the *bona fides* of the plaintiffs. The court found that inferences could be drawn that plaintiffs did not bring the action in good faith for a legitimate and proper purpose. The court based its conclusion on reports of organized crime control and bid rigging in the concrete industry. Moreover, the court determined that 90–100% of the concrete market in Manhattan was in the control of two of the plaintiffs, Certified Concrete Co. and Atlas Transit Mix Corp., while most of the other plaintiffs were located outside the Manhattan market, and had never before even bid on City projects. The Appellate Division, First Department, unanimously affirmed the dismissal of plaintiffs' action.[2]

## B. The Federal Court Action

Within two weeks of commencing their simultaneous state and federal actions on December 11, 1986, plaintiffs served the defendants with document requests and notices to take depositions in the federal antitrust suit before this Court. Depositions were scheduled to commence on January 14, 1987 with document production by January 26. After several adjournments requested by the City, discovery began in mid-February, and by the end of February the City had produced thousands of pages of responsive documents. Between February 26 and April 10, 1987, plaintiffs took ten days of depositions.

---

**1.** References throughout are as follows: Plaintiff ("P."); Affidavit ("Aff."); Exhibit ("Ex."); Transcript ("Tr."); Memorandum ("Mem."); Reply ("Rep."); Supplemental ("Supp."). All numbered exhibits refer to those which accompany the February 13, 1989 Walpin Affidavit.

**2.** 134 A.D.2d 973, 520 N.Y.S.2d 694. The Appellate Division affirmed by order dated November 10, 1987. The New York Court of Appeals dismissed plaintiffs' appeal as of right by order dated February 17, 1988. The Appellate Division denied plaintiffs' motion for permission to appeal by order dated April 28, 1988. The Court of Appeals denied a similar motion by order dated September 13, 1988.

With plaintiffs' discovery well underway, the parties turned to defendants' discovery requests. It is plaintiffs' response to these requests that is at the core of the City's motion for sanctions.

### 1. The City's Quest for Documentary Discovery

The City served its document requests on February 17, 1987, and its notices of deposition on March 4, 1987. Responses were due by March 19, 1987. Upon stipulation of the parties, that response date was extended two weeks to April 2, 1987. On April 2, plaintiffs served Rule 34 Responses to the City's document requests ("the April 2 Responses").[3] See Miller Aff., Motion to Compel, Ex. B–M. The eleven concrete producers submitted separate Responses but each included identical general objections claiming that many of the requested documents contained confidential information relating to prices, operating costs and market share and territory information—such as how much concrete each plaintiff had delivered and to whom it was delivered—and would only be produced to the City pursuant to a proposed confidentiality stipulation and order. See Miller Aff. Motion to Compel ¶ 18.

On April 2, hours after plaintiffs served their initial Rule 34 Responses, plaintiffs' counsel learned that some of the plaintiffs were not willing to produce their documents relating to price, cost and customers at all because they no longer believed the City was able, even under a proposed confidentiality stipulation, to keep information out of the hands of competitors.[4] Consequently, plaintiffs' counsel sent a letter ("the April 2 letter") to the City in order to clarify "some ambiguity" which "may have resulted" in the "rush to generate" the Rule 34 Responses. See Miller Aff. Ex. B. In the letter, counsel explained that the

objection to producing confidential information, as set forth in General Objection H of the Rule 34 Responses,[5] as well as any other applicable objection, should be applied generally without regard to an agreement on a proposed confidentiality stipulation. Plaintiffs had thus decided not to allow discovery of *any* of their purportedly confidential documents unless their stated objections were overruled by this Court.

On April 3, 1987, at a conference before the Court, plaintiffs' counsel admitted that they were having an "enormous problem ... trying to convince [their] clients that [material relating to prices, costs and customers] is something that need be discovered here." Ex. 37 at 12. The Court, by Order dated April 14, 1987, then directed plaintiffs to produce all documents to which they did not object by April 22, 1987. The Court also ordered a stay, precluding plaintiffs from taking further depositions of City witnesses until plaintiffs provided the City with meaningful discovery. Without document production, the City was unable to conduct its noticed depositions. See Ex. 38. By the April 22 compliance date, plaintiffs had only produced documents in response to five of the City's thirty Requests.

On April 30, 1987, the City served counterclaims against five of the plaintiffs (John Quadrozzi, Quadrozzi Concrete Corp., Joseph A. Ferrara, Ferrara Bros. Building Materials Corp., and Marine Pollution Services Inc. d/b/a Certified Concrete Co.) and third-party claims against two additional parties (Edward J. Halloran and Transit–Mix Concrete Corp.). The counterclaims and third-party claims alleged antitrust violations similar to those that plaintiffs alleged against the City. See Ex. 49.

On May 13, 1987, frustrated with plaintiffs' refusal to disclose information which

---

**3.** Fed.R.Civ.P. 34(b) requires the party upon whom a request for document production is served to respond either by authorizing inspection of documents or by objecting to the request, stating reasons for the objections.

**4.** Plaintiffs claim that this belief was based on the City's prior disclosure of its own purportedly confidential documents. The City describes

these disclosures as "inadvertent." See Walpin Supp.Aff. ¶¶ 34–35; Miller Rep.Aff. ¶¶ 10–11.

**5.** In General Objection H plaintiffs object to the production of "any documents containing confidential business and financial information, including costs, prices and identities of customers." Miller Aff., Ex. B.

the City deemed to be at the heart of the antitrust suit and necessary for the City's defense, the City moved to compel discovery pursuant to Fed.R.Civ.P. 37(a).[6] Plaintiffs' response to the City's motion to compel was due on May 28, 1987.

### 2. The Manzo–Quadrozzi Conversation

The City's May 13, 1987 motion included a motion to compel responses by John Quadrozzi to the City's First Requests for Admission ("Requests") pursuant to Fed.R. Civ.P. 36. See, Shprintz Aff., Ex. E. This portion of the City's motion concerned the related state proceeding in which Quadrozzi submitted an affidavit, sworn to in December, 1986, stating that he had never "knowingly been associated with any 'organized crime' figures."[7] Shprintz Aff., Ex. A. On March 16, 1987, the City had served its Requests on Quadrozzi asking him, in part, to admit or deny his statement regarding association with organized crime figures. The Requests were based upon a letter submitted to Judge Joseph McLaughlin of the Eastern District of New York by the Organized Crime Strike Force in connection with the sentencing of Frank Manzo. The letter described Manzo as a "powerful member of the Lucchese crime family," referred to his influence in "restraining trade and maintaining artificially high prices in the concrete industry" and revealed a conversation at Manzo's home between Manzo and Quadrozzi ("the Manzo–Quadrozzi conversation"), secretly recorded in May, 1983. In the taped conversation Quadrozzi complained to Manzo about a new concrete company trying to operate outside its approved territory and asked him for protection. Shprintz Aff., Ex. B. The City's Requests sought an admission from Quadrozzi of this conversation.[8]

On March 23, 1987, after the City served its Requests, the City forwarded to plaintiffs' counsel a copy of the order dated May 3, 1983, authorizing the interception of oral communication at Manzo's home, that resulted in the secret recording of the Manzo–Quadrozzi conversation. See Shprintz Aff. Ex. G. On April 9, 1987, after the City had made its Requests but prior to Quadrozzi's response, the City deposed William A. Carden of the Federal Bureau of Investigation. Plaintiffs' counsel attended this deposition at which Carden produced the tape recording of the Manzo–Quadrozzi conversation.[9]

On April 15, 1987, rather than responding directly to the City's Requests, Quadrozzi, by plaintiffs' counsel, objected to the Requests on the grounds that the surveillance materials used in May, 1983, were obtained illegally and were disclosed without prior notice and court approval. Qua-

---

6. The City especially requested *historical* price, cost and market share and territory information dating back at least to 1980, in order to support the City's position that its actions in contracting with West 57th were entirely justified in light of existing market conditions. The City contends that plaintiffs could have easily lowered their prices only recently in anticipation of the lawsuit and in order to claim that West 57th's prices were "artificially high". P. Amended Complaint ¶ 110; See, also Id. ¶¶ 36, 45; Miller Aff. in Support of Motion To Compel ¶¶ 12–16.

7. The Quadrozzi Affidavit was also submitted to this Court as Ex. 7 to the Affidavit of Gerald Walpin in Opposition to Defendants' Motion for a Stay of Proceedings, sworn to January 21, 1987.

8. Specifically, the Requests asked Quadrozzi to admit or deny (1) whether he was at Frank Manzo's house on May 28, 1983, the date of the intercepted conversation; (2) whether Quadroz-

zi knew at the time of the conversation that Frank Manzo was a member of an organized crime family; (3) whether Quadrozzi had complained to Manzo that another concrete company was operating outside of its approved territory; (4) whether Quadrozzi asked Manzo to stop that company from opening a new plant; and (5) whether Manzo had told Quadrozzi that he had stopped other concrete producers from operating outside of their assigned territories and assured Quadrozzi that he would prevent the company from opening a new plant.

9. On the tape Quadrozzi says to Manzo, among other things, "number one ... you gotta protect us—number two, there's a rule, no new plants." Shprintz Aff.Ex. H. at 24. The City contends that this statement, considered with other statements in the Quadrozzi–Manzo conversation, amounts to "clear evidence that Quadrozzi knew that Manzo was an organized crime figure before he signed his affidavit." City Rep.Mem. at 61.

drozzi also objected to the Requests on the ground of relevance.

As noted above, the City then moved to compel Quadrozzi's answers, on May 13, 1987, as part of its larger motion to compel discovery from all plaintiffs. Quadrozzi, now acting through separate counsel, Jessel Rothman, opposed the motion to compel and cross-moved for a protective order prohibiting the City from obtaining any discovery from Quadrozzi concerning the tape of his conversation with Frank Manzo.

### 3. The Stay and Settlement Attempts

On May 18, 1987, ten days before they were due to respond to the City's May 13 motion to compel, plaintiffs moved to stay the entire action based upon uncertainties as to the ability of West 57th and Ally to proceed with the contract that could render the entire action moot. On June 4, 1987, the Court granted the stay.

On July 7, 1987, at a conference, the Court continued the stay until August 11. At the July conference, Ally appeared on behalf of West 57th but neither were represented by counsel. Earlier, on May 18, 1987, the Court had permitted previous counsel for West 57th to withdraw based on West 57th's failure to pay legal fees. At that time the Court ordered West 57th to retain new counsel by June 30, 1987. *See* Walpin Aff., Request For Default, Ex. C at 17–18. At the July 7 conference, no appearance on behalf of West 57th having been filed, the Court ordered West 57th to have counsel file an appearance by July 13, 1987. *See* Ex. 41 at 3–4. When West 57th failed to obtain counsel by July 13, plaintiffs, on July 15, moved for a default judgment granting the injunctive relief sought in their complaint.

At the next conference on August 11, 1987, West 57th was represented by counsel and action on the default judgment was deferred. At this conference plaintiffs'

counsel proposed to settle the action by suggesting that concrete companies throughout the City be able to bid on City jobs "at prices no greater than what is in the Ally contract ... without any subsidy from the City." Ex. 48, Tr. at 15. Plaintiffs' counsel were optimistic that the individual concrete producers would agree to such an arrangement because the market prices then obtaining were below those stipulated in the City's contract with West 57th. Because the contract's status remained questionable, the Court continued the stay until September 10, 1987.[10]

The City rejected plaintiffs' settlement proposal since it would not afford a remedy to the anticompetitive practices that the City believed to exist in the ready-mix concrete industry when it contracted with West 57th.[11] As directed by the Court at the August 11 conference, the City submitted its own counter-proposal for settlement. The City's proposal was set forth in a confidential letter to the Court dated September 3, 1987 ("the September 3 letter"):

> [I]f the plaintiffs dropped their claims entirely, the City would not seek sanctions against the plaintiffs or against the Rosenman & Colin firm. The City will not agree, however, to dismiss its counterclaims and third-party complaint, but would agree to consider permitting the Attorney General of the State of New York to litigate those claims in connection with his pending cases.

Ex. 48 at 12.

At the September 10 conference the Court was told that a new corporation, F.E.D. Concrete Corporation, ("F.E.D.") had bought Ally's shares in West 57th and would assume Ally's obligations under the contract with the City and proceed with the production of concrete at the West 57th Street site. The basis for the stay, Ally's apparent inability to perform the contract,

---

**10.** At the conference the Court noted that "[i]t may well be that this project is going to collapse of its own weight. It appears to be fraught with problems." Tr. of August 11 Conference at 13.

**11.** The City contends that plaintiffs' August 11 proposal merely reiterated an allegation in the

complaint that "some of the current concrete producers can furnish the City's concrete requirements at a price at or less than the prices set forth in the Contract." Miller Aff. ¶ 40, n. 13.

was thus removed. The parties reported no further progress toward settlement. Consequently, the Court lifted the stay and ordered plaintiffs to respond to the City's May 13, 1987 Rule 37(a) motion to compel.

### 4. Court Orders to Compel Discovery

At the September 10 conference, Walpin stated that he believed that his clients had overcome their unwillingness to produce price, cost and customer documents,[12] and advised the Court that plaintiffs would need a week to propose a discovery production response with an appropriate confidentiality order. Walpin stated that plaintiffs would require thirty days either to produce documents, if the City accepted the proposal, or to respond to the City's motion to compel, in the event the proposal was rejected. The Court thus ordered plaintiffs to produce documents or otherwise respond to the City's motion to compel by October 13, 1987.

On October 8, 1987, nearly four weeks after plaintiffs stated they would need one week to propose a response, plaintiffs made their document production proposal to the City over the telephone. The City requested the proposal in writing which arrived the following day, October 9, 1987, the last business day before the October 13th deadline.[13] See Ex. 51. Plaintiffs contend that they believed that their October 9 proposal rendered the City's motion to compel moot, since they thought that disagreement over production of documents would be resolved. Consequently, plaintiffs contend that they believed it unnecessary to respond to the motion to compel by the Court's established October 13, 1987 deadline. See Miller Aff. Ex. D at 3.

Thus, on October 13, 1987, plaintiffs did not comply with the Court's September 10 discovery Order. Instead, on that day, plaintiffs sent the Court two letters: one, advising the Court of their October 9 proposal (Miller Aff. Ex. D), and a second, requesting reinstatement of the stay based, once again, upon their view that the City's contract with West 57th for the production of concrete was not viable. Ex. 52. Plaintiffs assured the Court that, should the stay be denied, plaintiffs would be "ready to continue their attempt promptly to resolve their dispute with the City over its document requests and to produce responsive documents" as outlined in their proposal. Id. at 2.

By letter to the Court, dated October 19, the City rejected plaintiffs' discovery proposal because it was not responsive to all of the City's requests, it merely stated that "most" but not all plaintiffs would agree to participate in the proposal and it sought to provide brief written statements in lieu of certain of the documents requested by the City. The City also expressed its belief that "plaintiffs and their attorneys are properly subject to sanctions" for reversing their position on previously stated nonnegotiable objections—objections which caused the City to move to compel discovery. With respect to plaintiffs request for reinstatement of the stay, the City informed the Court that it was confident that the project would go forward and thus it opposed reinstatement of the stay.

On October 22, 1987, in response to plaintiffs' letter to the Court of the same date which reiterated its position on reinstatement of the stay (See Miller Aff., Motion To Compel, Ex. AG), the City informed the Court by letter ("the October 22 letter")

---

**12.** Plaintiffs explain their reversal on the production of confidential information by pointing to the flurry of newspaper articles surrounding the City's contract with West 57th and the subsequent litigation, in April 1987. Plaintiffs note that by October much of the media attention had died down, thus lessening the possibility of adverse publicity in the event that the City leaked information.

**13.** Plaintiffs' proposal centered on information relating to prices, costs and customers. Plaintiffs proposed to disclose all documents already

produced to the Attorney General pursuant to subpoena relating to prices costs and production volume for the period 1980–1985. In addition, for the period 1985 to October of 1987, plaintiffs proposed to make available sales contracts, price quotes, bid proposals, purchase orders, sales confirmations, delivery tickets, contracts for supplies, price lists and financial statements. Plaintiffs' counsel stated that the proposal applied to most of the plaintiffs but that he had not yet received authorization from every plaintiff.

that if plaintiffs did not wish to be burdened with expensive and time-consuming proceedings they could "withdraw their lawsuit until such time as they find that West 57th Street poses some actual competitive threat." Ex. 56.

On November 10, 1987, the Court denied plaintiffs' application for reinstatement of the stay and ordered plaintiffs "to make full document production or to file objections with respect thereto in compliance with Fed.R.Civ.P. 34" by November 17, 1987. Ex. 54.

One day before the deadline, on November 16, plaintiffs proposed to the City that both sides withdraw their claims *without prejudice*. Plaintiffs contend that this proposal was based on their belief that F.E.D., like Ally, was unable to perform under the contract, their concern over the escalating cost of document production preparation and their continued wariness over producing their confidential documents. Plaintiffs maintain that they were optimistic that the City would accept the proposal, since it was allegedly based on the City's own prior settlement proposals.[14] Accordingly, and once again, plaintiffs "anticipated that it would be unnecessary to serve Rule 34 responses" and to comply with this Court's November 10 discovery Order by the November 17 deadline.[15] Walpin Aff. ¶ 100, n. 44. The City, however, rejected the proposal on November 16.

On November 17, 1987, plaintiffs, having failed to comply with the November 10 Order, requested a Court conference to "explore" their settlement proposal, and a deferral of plaintiffs' discovery obligations pending the outcome of the conference. Ex. 55. The next day, November 18, the

City informed the Court of its opposition to the requested conference and noted that plaintiffs had now violated both the September 10 and the November 10 Court orders. The City requested that, pursuant to Fed.R.Civ.P. 37(b)(2)(C), the Court impose sanctions for plaintiffs' discovery violations by dismissal of plaintiffs' action with prejudice and add further sanctions under Rule 11.

By order dated November 19, 1987, the Court denied plaintiffs' request for a conference and concluded that the City was "entitled to the discovery it has sought, or alternatively, a dismissal of plaintiffs' complaint *with prejudice*." The Court observed that plaintiffs had twice failed to comply with previous Orders entered on September 10, 1987 [16] and November 10, 1987 [17] and stated that it would "accept no more correspondence from plaintiffs and hold no more conferences on this issue." Ex. 58. The Court directed plaintiffs to comply in full under Rule 34 by November 30, 1987.

November 30, 1987, came and went with no document production by plaintiffs. Instead, on that day, plaintiffs served a Supplementary Rule 34 Response to the City's document requests—supplementing their Rule 34 Response delivered in lieu of discovery on April 2, 1987—setting forth certain objections conditioned on a proposed confidentiality order. Ex. 59. While plaintiffs claim that their Supplementary Response would have allowed for the production of most of the documents at issue (*See* Walpin Supp.Aff. ¶ 52), the City described it as containing inadequate proposals, some of which the City had already rejected.[18]

14. Plaintiffs point to the City's confidential letter to the Court of September 3, 1987, released by the Court at the September 10 conference, (*see supra* at 70) as well as the City's October 22, 1987 letter (*see supra* at 71.)

15. Plaintiffs' counsel note that they were unable to consult with all plaintiffs concerning the Rule 34 Responses "given the compressed timeframe" and admit that they would have been unable to serve responses by November 17 in any event. Walpin Aff. ¶ 100, n. 44

16. Order to produce documents or to file objections by October 13, 1987 (plaintiffs failed to

comply and instead applied for a stay of proceedings).

17. Order to make full document production or file objections by November 17, 1987, (plaintiffs failed to comply and instead requested a conference to explore their settlement proposal and requested that Rule 34 Responses be deferred).

18. The City's objections to the Supplementary Response, which generally mirrors the October 9, 1987 proposal by plaintiffs, include the following:

The City also characterized the confidentiality order upon which the Responses were conditioned as "burdensome and unworkable." [19] Miller Aff. Opposition to Leave Voluntarily to Dismiss ¶ 19.

It now appears that on November 30 plaintiffs had no intention of disclosing their confidential documents. At a November 27 meeting between plaintiffs and their counsel, plaintiffs instructed counsel to move, pursuant to Fed.R.Civ.P. 41(a)(2), for leave to voluntarily dismiss their claims without prejudice. Plaintiffs were cognizant of the risk that their claims could be dismissed with prejudice but considered this outcome preferable to being forced to incur legal fees and to being compelled to produce confidential documents. *See* Walpin Aff. ¶ 103. Accordingly, on December 2 plaintiffs moved for an order permitting them to withdraw their claims without prejudice.

On December 11, 1987, the City crossed-moved for an order, pursuant to Fed.R. Civ.P. 37(b), dismissing plaintiffs' complaint with prejudice. After review of the extensive record, on March 31, 1988, the Court granted plaintiffs' motion to voluntarily withdraw their claims, but with prejudice. *See* March 31 Order. In so doing, the Court noted:

> [P]laintiffs treated discovery as a one-way street ... [engaging in] a process of stalling and stonewalling.... Plaintiffs' arsenal of delaying tactics ranged from failing to comply with Court orders, to agreeing to discovery and then, at the moment discovery was to begin, generat-

ing fresh delaying tactics. Indeed, there is no question in the Court's mind that the present request for dismissal without prejudice ... is but one more delaying tactic.

Tr., March 31 Order at 5–6.

The Court concluded by noting that "[i]n avoiding document production, plaintiffs' conduct borders on contumacy." *Id.* at 11.

On December 23, 1988, the City brought the instant motion for sanctions. The City alleges (1) that plaintiffs failed to comply with discovery, warranting monetary sanctions pursuant to Fed.R.Civ.P. 37(b) and; (2) that plaintiffs brought and continued the action in bad faith, warranting monetary sanctions pursuant to Fed.R.Civ.P. 11, 28 U.S.C. § 1927 and the common law prohibition of bad faith litigation.

## II. DISCUSSION

### A. Rule 37(b)

■ Rule 37(b) provides for sanctions against parties who unjustifiably resist discovery. *See* Rule 37 Advisory Committee Notes. Courts impose such sanctions as disciplinary measures to ensure that a party will not benefit from its own failure to comply with discovery. *Update Art, Inc. v. Modiin Pub., Ltd.,* 843 F.2d 67, 71 (2d Cir.1988). Additionally, sanctions under Rule 37(b) are intended to act as a specific deterrent against the party at fault in order to facilitate compliance with particular orders and as a general deterrent against other parties in future litigation. *National Hockey League v. Metropolitan Hockey*

---

(i) it offered to produce sworn statements in lieu of documents;

(ii) it withheld, without justification, information deemed by plaintiffs to be cumulative;

(iii) it stated that plaintiffs "will authorize" inspection of documents previously produced to the Attorney General, but included no such authorization;

(iv) it forced plaintiffs to bear the burden of determining whether documents in the custody of the Attorney General covering the years 1980–1984 were co-extensive with documents to be produced by plaintiffs for the years 1985–1986, and if determined that they were not, plaintiffs would then produce any correlative documents not in the possession of the Attorney General.

**19.** The objections to the Confidentiality Order include the following:

(i) it required the City to provide 20 days notice before using any document designated as confidential at a deposition of a person other than the one who produced the document;

(ii) it only permitted disclosure to one person in City government apart from counsel;

(iii) it required 30 days notice for a motion to modify the order;

(iv) it allowed plaintiffs unfettered discretion to designate materials as confidential without a provision for good faith;

(v) it excluded West 57th's counsel from receiving any confidential information by barring attendance at depositions.

*Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Cine Forty–Second Street Theatre Corp. v. Allied Artists Picture Corp.*, 602 F.2d. 1062, 1066 (2d Cir.1979). Monetary sanctions, in particular, may be awarded to compensate for added expense caused by the recusant party's conduct. *See* J. Moore, Moore's Federal Practice, ¶ 37.03 at 37–109 (2d ed. 1948 & Supp.1988).

■ District Courts have wide discretion in determining whether to impose sanctions. *National Hockey League*, 427 U.S. at 642, 96 S.Ct. at 2780. Significantly, however, Rule 37 was amended in 1970 and again in 1980 to encourage the imposition of sanctions. The Second Circuit has stated that Rule 37 must become a credible deterrent "rather than a 'paper tiger.'" *Cine Forty–Second Street*, 602 F.2d at 1064, *quoting* Rosenberg, New Philosophy of Sanctions, in Federal Discovery Rules Sourcebook 141 (W. Treadwell ed. 1972). In *Sieck v. Russo*, 869 F.2d 131 (2d Cir. 1989), the Second Circuit re-emphasized "'the importance ... [p]laced on a party's compliance with discovery'" and warned that those "'who flout[ ] such orders [do] so at [their] own peril.'" *Sieck*, at 133, *quoting Update*, 843 F.2d at 73.

Monetary sanctions under Rule 37 were mandated by the 1970 amendment which added that courts

> *shall* require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorneys' fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b) (emphasis added). *See John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.*, 845 F.2d 1172, 1177 (2d Cir.1988). The Advisory Committee Notes explain that in employing the word "shall" it meant to place the burden of justifying the failure to comply with discovery on the disobedient party. *See* Rule 37 Advisory Committee's Note to 1970 Amendment.

■ While severe sanctions, such as dismissal of the action, are generally imposed only when the recusant party's conduct rises to willfulness or bad faith, monetary sanctions are considered to be relatively mild given the spectrum of Rule 37's arsenal, and thus may be awarded in the absence of bad faith. *See Cine Forty–Second Street*, 602 F.2d at 1066–67; *Argo Marine Systems, Inc. v. Camar Corp.*, 102 F.R.D. 280, 284 (S.D.N.Y.1984). As the Second Circuit stated in *Cine Forty–Second St.:* "Negligent, no less than intentional, wrongs are fit for deterrence" under Rule 37. 602 F.2d at 1067.

■ In determining whether to impose sanctions for discovery violations under Rule 37, courts should consider the entire history of the litigation in order to assess whether noncompliance was attributable to some fault of the disobedient party. *See Argo*, 102 F.R.D. at 285. The degree to which the offending party failed to comply with discovery, the importance of the information withheld and the extent of the prejudice occasioned by the delay all bear on a court's determination of whether to impose sanctions. *See Litton Systems, Inc. v. American Telephone and Telegraph, Co.*, 91 F.R.D. 574, 576 (S.D.N.Y.1981), *aff'd* 700 F.2d 785 (2d Cir.1983).

The City argues that plaintiffs failed to comply with four specific discovery orders and have failed to come forward with any justification for their noncompliance. The Court will consider each alleged discovery violation in turn.

### 1. April 14 Court Order

■ On April 14, 1987, the Court ordered plaintiffs to produce all documents, to the extent that plaintiffs did not object to their production, by April 22, 1987. Ex. 38. The City contends that plaintiffs disobeyed the spirit, if not the letter, of the Court order by producing documents in response to only five of the City's thirty Requests— documents already in the possession of the City or otherwise publicly available. *See* Miller Aff. Notice of Motion To Compel ¶ 17. Plaintiffs claim that the production of only a few of the requested documents indicates compliance with the April 14 Or-

der, since they *objected* to those that they did not produce. Plaintiffs apparently assume that *any* objections would have satisfied their discovery obligations. This simply is incorrect. Upon examination of the nature of plaintiffs' objections, the Court finds plaintiffs did not satisfy their discovery obligations.

Plaintiffs objected to the disclosure of documents relating to price information and operating costs prior to 1985 [20] and to the disclosure of market share information and territories prior to 1984 [21] on the grounds that disclosure of such information would be burdensome and irrelevant. This Court is not persuaded that these City Requests were unduly burdensome or beyond the scope of the action. "Discovery in antitrust cases routinely goes beyond the damage period, particularly where it is necessary to establish intent or the pattern of a conspiracy." *Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587 (S.D.N.Y.1973); *See also Quonset Real Estate Corp. v. Paramount Film Distr. Corp.*, 50 F.R.D. 240 (S.D.N.Y.1970) (discovery allowed to date back ten years). In any event, as set forth in their April 2 letter [22] plaintiffs brazenly refused to disclose *any* documents relating to price, costs, and customers. This information is at the heart of this—indeed any—antitrust proceeding. As Judge Ward of this district has noted:

> In an antitrust action where the essence of the charge is that defendants have engaged in activity in restraint of competition, it is not unusual ... to probe, matters at the heart of the business dealings and competitive relationships of the parties. 'Harm may result to some of the appellants but that harm will be a by-product of competition.'

*Maritime*, 60 F.R.D. at 590 (quoting *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 999 (10th Cir.1965), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965)).

The Court is not persuaded that plaintiffs' actions were substantially justified due to plaintiffs' "fear of City dissemination of the materials outside [the] lawsuit." P. Mem. at 41. Plaintiffs claim that they lost faith in the City's ability to keep the materials confidential after the City produced certain confidential materials at the February 26, 1987 deposition of Mustapha Ally. *See* Walpin Aff. ¶¶ 39–41. Yet there is little, if any, basis for plaintiffs' accusation that the City had "proven itself incapable by April 1987 of abiding by the terms of confidentiality agreements." City Rep. Mem. at 44. One instance of disclosure, in light of the thousands of documents at issue, is not indicative of an inability to abide by confidentiality agreements. Plaintiffs were not free to unilaterally decide not to honor an unobjectionable discovery request on such a flimsy pretense.

Moreover, if plaintiffs were fearful that their documents would be revealed outside the lawsuit, they could have sought a protective order. *See, e.g., Chesa International, Ltd. v. Fashion Associates, Inc.*, 425 F.Supp. 234, 237 (S.D.N.Y.1977), *aff'd*, 573 F.2d 1288 (2d Cir.1977) (names of customers are proper matter for discovery under protective order for which it is plaintiffs' obligation to move). Plaintiffs assert that they instead sought to negotiate such an order informally. *See* P.Mem. at 16–17, n. 16. Such action is commendable at times but not when it impedes the flow of discovery and it does not excuse the failure to comply with this Court's Order. Plaintiffs' refusal to disclose the requested documents handcuffed the City's efforts in defending the action, forced the Court to stay plaintiffs' depositions and led directly to the City's motion to compel discovery on May 13, 1987. *See supra* at 68. Under such circumstances, sanctions are warranted.

*2. September 10, Court Order*

■ The Court directed plaintiffs to respond to the City's Rule 37(a) motion to

---

**20.** *See, e.g.,* Miller Aff. Notice of Motion To Compel Ex. B–M, Responses to Requests Nos. 9, 10, 18, 20, 22.

**21.** *See, e.g.,* Response to Request Nos. 17, 19.

**22.** *See supra* at 68.

compel by October 13, 1987 and plaintiffs failed to do so. Instead, on that date, plaintiffs informed the Court of their October 9 proposal to produce documents and requested a reinstatement of the stay. While plaintiffs admit that their conduct might constitute technical noncompliance with the September 10 discovery Order, they contend that it does not warrant the imposition of sanctions. The Court finds otherwise.

Plaintiffs were given ample time at the September 10 conference to propose a means for document production, or to respond to the City's motion to compel by October 13. Yet they delivered their proposal for document production to the City on October 9, the last business day before the October 13 compliance date. Plaintiffs' actions do not amount to compliance with the Court's September 10 Order. Plaintiffs' "optimism" that the City would agree to their proposal cannot excuse their noncompliance. Plaintiffs' unilateral attempt to control the flow of mandated discovery only served to obstruct the litigation. It cannot excuse plaintiffs' failure to obey an order of the Court.

Plaintiffs' noncompliance with the September 10 Order also is not justified by their request to reinstate the stay. Plaintiffs could not avoid compliance by waiting until the deadline and then suggesting to the Court that it stay the action due to the "apparent absence of a viable contract." Ex. 52. The status of the contract on October 13, 1987 was by no means sound—the City admitted that termination remained a possibility—but it was not dead in the water. Plaintiffs could not unilaterally decide that the contract was not viable. More importantly, a request to consider the viability of the contract does not fulfill plaintiffs' discovery obligations; it is irrelevant to them. In sum, plaintiffs' request of a stay on October 13, was merely a smokescreen calculated to detract from their failure to produce Rule 34 Responses in compliance with the Court's September

10 Order. Since plaintiffs' noncompliance was not justified, sanctions will be imposed.

### 3. November 10 Court Order

■ The Court's next discovery order directed plaintiffs to "make full document production or to file objections with respect thereto in compliance with Fed.R.Civ.P. 34" by November 17, 1987. Ex. 54. Plaintiffs concede their failure to comply with this order but assert that this failure is not sanctionable. Plaintiffs once again argue that their own last minute submissions rendered compliance with the Court's order unnecessary. Once again plaintiffs' justifications are without merit.

This time plaintiffs' excuse stemmed from their claim that their November 16, 1987 proposal—whereunder both sides would have dismissed their claims without prejudice—"essentially constituted ... acceptance" of previous City proposals. Walpin Aff. ¶ 101. Plaintiffs purportedly relied on the City's September 3 [23] and October 22 letters [24] as invitations for their November 16 proposal to dismiss and allege surprise at the City's rejection of their proposal and contend that it was the City's "sudden about-face" posture that prolonged the action. Ex. 55 at 2. Plaintiffs claim that the City is now moving for sanctions against action which it had previously "in essence" invited. P.Mem. at 37.

In neither of its previous letters, however, did the City ever agree to withdraw their counterclaims and third-party claims; it only "consider[ed] permitting" the Attorney General to handle those claims instead. *See supra* at 70. In any event, plaintiffs' reliance upon the City's actions should not have been absolute. The City was in no way bound by its suggestions made confidentially to the Court. Moreover, at this juncture, plaintiffs should have been prepared to comply with discovery or file objections. Yet plaintiffs concede that they could not have done so. *See* Ex. 55 at 2, n. 2. Complaints about lack of time to comply with a discovery order, seven months after

---

**23.** *See supra* at 70.

**24.** *See supra* at 71.

initial discovery responses were due, are simply unavailing.

On November 17—the date of compliance—plaintiffs requested a conference to explore their proposal to dismiss. Plaintiffs now suggest that this response, while not a Rule 34 Response to discovery, justified noncompliance since it was in accord with this Court's own suggestion at the September 10 conference that "if circumstances arise which make settlement appropriate ... then we can take such steps as are required at that time." Walpin Aff. ¶ 101. Plaintiffs' attempt to mask their noncompliance in this Court's own language amounts to yet another smokescreen. This Court never stated that a conference could be held in lieu of Rule 34 Responses. Furthermore, plaintiffs cannot be excused from discovery simply because they unilaterally decide that settlement based on their own terms is appropriate and then introduce such a proposal the day before they are to comply with their discovery obligations. Plaintiffs' actions indeed constitute an unjustified violation of the Court's November 10 Order.

### 4. November 19 Court Order

■ The Court next ordered full compliance under Rule 34 by November 30, 1987. Unlike the previous three Court Orders with which plaintiffs failed to comply, plaintiffs' Supplemental Rule 34 Response and accompanying confidentiality order, served on November 30, constitutes compliance with the November 19 Order.

Though the response largely mirrored the October proposal, plaintiffs actually submitted Responses—albeit again without document production—rather than merely submitting a letter outlining in little detail the degree to which plaintiffs would produce documents and hinging such production on an "appropriate" confidentiality order yet to be submitted. While the Response and accompanying order were far from complete, the Court finds that their inadequacies are not so egregious as to be tantamount to noncompliance.

### 5. Summary

Plaintiffs failed to comply with three of the Court's discovery Orders; those of April 14, September 10, and November 10. Plaintiffs' sole argument that other circumstances render sanctions unjust is their assertion that since they moved to withdraw their claims voluntarily, on December 2, they saved the City attorneys' fees. See P. Mem. at 40–41. Plaintiffs contend that to be penalized further—that is, to be penalized beyond dismissal with prejudice—would deter other parties from similarly withdrawing claims that no longer have a valid basis. This argument is irrelevant to the question of whether discovery sanctions are warranted. That plaintiffs subsequently moved to dismiss their claims voluntarily cannot post hoc excuse their discovery failures or otherwise lessen the need to impose Rule 37 sanctions.[25] Even if plaintiffs' action did ultimately save the

---

25. Plaintiffs admit that the cases cited in support of their proposition that dismissal with prejudice limits an additional imposition of monetary do not concern sanctions under Rule 37(b). Nonetheless, plaintiffs assert that their supporting caselaw concerns other "analogous sanctions provisions" and they would have this Court look to these cases for guidance. P.Supp. Mem. 18, n. 17. Plaintiffs' reliance on these cases is misplaced. Plaintiffs cite *Colombrito v. Kelly*, 764 F.2d 122 (2d Cir.1985) which concerns the inappropriateness of an award of attorneys' fees pursuant to Fed.R.Civ.P. 41(a)(2) after a lawsuit is voluntarily dismissed with prejudice. However, the Second Circuit added that dismissal was only inappropriate "absent independent statutory authority for such an award." *Id.* at 134. *See also* 9 Wright & Miller § 2366 (1971 and Supp.1988) (if dismissal is

with prejudice under Rule 41(a)(2) "the court lacks power to require an attorney's fee to be paid, unless the case is of a kind in which an attorney's fee might otherwise be ordered"). In the instant action, the Court awards attorney's fees based on independent statutory authority— Rule 37(b)—and is not merely imposing monetary sanctions pursuant to Rule 41(a)(2), after dismissal under that Rule.

The other case relied on by plaintiffs is *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986), which concerns the inappropriateness of an award of attorneys' fees pursuant to Fed.R. Civ.P. 11 and 28 U.S.C. § 1927, where there is no showing that the claims were instituted without factual basis and where, once lack of factual basis was discovered, delay in withdrawal of the claims was not claimant's fault. Such a fact pattern is wholly inapposite to the case at hand.

City future attorneys' fees, a Rule 37 sanctions award is not unjust because such claims pertain to discovery expenses already and unjustifiably incurred.[26]

Plaintiffs' argument that the imposition of discovery sanctions will deter future claimants is without substance. Discovery sanctions stand on their own. Their use will not deter future parties with meritorious claims; they should, however, and one hopes will, deter future parties from violating discovery orders. *See Mercy v. County of Suffolk,* 748 F.2d 52, 54 (2d Cir.1984). As the Second Circuit has noted, the imposition of sanctions for failure to provide discovery is "essential to the sound administration of justice." *Penthouse Intern., Ltd. v. Playboy Enterprises,* 663 F.2d 371, 392 (2d Cir.1982). Since plaintiffs' noncompliance with the Courts' April 14, September 10 and November 10 orders was not justified, the Court finds that these violations each warrant sanctions under Rule 37(b).

## B. Rule 11

 Fed.R.Civ.P. 11, as amended, requires that if a party is represented by an attorney, the attorney must sign all papers submitted to the court. It further states:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well

grounded in fact and is warranted by existent law or a good faith argument for extension, modification, or reversal of existing law, *and* that it is not interposed for any improper purpose, such as to harass or to cause any unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11 (emphasis added). There are thus two grounds for sanctions under Rule 11: the "frivolous clause" and the "improper purpose clause." The "frivolous clause" of Rule 11 has two subparts: whether the party or attorney has made a reasonable inquiry into the facts, and whether the party or attorney has a made a reasonable inquiry into the law. The "improper purpose clause" provides that a party may not interpose a motion, pleading, or other document for purposes of delay, harassment, or increasing the costs of litigation. As each clause imposes an independent obligation, a violation of either is sufficient to impose Rule 11 sanctions. *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1130 (5th Cir.1987); *accord, Thomas v. Capital Security Services,* 812 F.2d 984 (5th Cir.1987). Similarly, a violation of either subpart of the frivolous clause constitutes a violation of Rule 11. *Brown v. Federation of State Medical Boards of U.S.,* 830 F.2d 1429, 1435–36 (7th Cir.1987).[27]

 While a determination of reasonable inquiry depends largely on the facts of the particular case, *Thomas,* 812

---

**26.** Moreover, as the City states, the penalty of dismissal with prejudice punishes only the plaintiffs—not their attorneys.

**27.** Plaintiffs rely on dictum *The City of Yonkers v. Otis Elevator Co.,* 649 F.Supp. 716, 736 (S.D.N.Y.1986) to support the proposition that bad faith litigation does not warrant Rule 11 sanctions where submissions are colorable. However, *Oliveri* and *Eastway* do not suggest that an improper purpose may escape sanctions if the claims are colorable. To the contrary, *Eastway* specifically emphasizes that sanctions are to be awarded "where a pleading has been interposed for any improper purpose, *or where"* the pleading is frivolous. *Eastway, supra* 762 F.2d at 254 (emphasis in original). The Court notes that the Ninth Circuit has considered this question of interpretation as to whether Rule 11 is applicable to a well-grounded pleading pursued for an improper purpose. That Circuit concluded, in *Zaldivar v. City of Los Angeles,* 780 F.2d 823 (9th Cir.1986), that if the *initial* complaint is well-grounded in fact and law, filing it for an improper purpose will not warrant sanctions. *Accord Robinson, supra* 808 F.2d at 1130 n. 20. This Court reserves the question of whether a well-grounded complaint can be filed for an improper purpose since there is no evidence here that plaintiffs' complaint violates Rule 11. Nonetheless, the Court finds that sanctions may be imposed for filing subsequent papers for an improper purpose, even where the parties' motions are colorable. *See e.g.,* Moore, 11–25; *Cohen v. Virginia Electric & Power Co.,* 788 F.2d 247 (4th Cir.1986); *Davis v. Veslan Enterprises,* 765 F.2d 494 (5th Cir.1985).

F.2d at 988–89, the *Advisory Committee Note* has provided some guidance:

> What constitutes a reasonable inquiry may depend on such
>
> > factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

97 F.R.D. 195, 199 (1983). Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions. "The key question in assessing frivolousness is whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law." *Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 453 (9th Cir. 1987). The rule is violated "where it is patently clear that a claim has absolutely no chance of success." *Eastway*, 762 F.2d at 254.

■■■ Since the 1983 amendments to Rule 11, subjective bad faith is no longer the crucial inquiry. *Compare Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985), *cert denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (good faith no longer provides a "safe harbor" from sanctions) with *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir. 1980) (subjective bad faith standard applied). Accordingly, a court must now look to the objective reasonableness of an attorney's actions under the circumstances.[28] The Second Circuit has recently and explicitly reasserted that "[a] showing of 'bad faith' is not required where the conduct of

counsel is at issue.... Rather, an objective standard, focusing on what a reasonably competent attorney would believe, is the proper test." *Greenberg v. Hilton International*, 870 F.2d 926, 934 (2d Cir. 1989). *See also Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469 (2d Cir.1988), *cert. granted*, —— U.S. ——, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989) (subjective standard taking account of good faith has been replaced by objective test).

The 1983 amendment was intended "to reduce the reluctance of courts to impose sanctions." *Advisory Committee Note*, 97 F.R.D. at 198. The problem with the old subjective test was that, as one court stated, "there is no position—no matter how absurd—of which an advocate cannot convince himself." *Wells v. Oppenheimer & Co., Inc.*, 101 F.R.D. 358, 359 n. 3 (S.D.N.Y. 1984). The Second Circuit, in *Calloway*, noted that "[t]he 1983 amendment to Rule 11 was intended to 'discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivolous claims or defenses.' " 854 F.2d at 1469.[29]

■■■ Where it is the party, however, and not the attorney, that is the target of a Rule 11 motion, a subjective good faith test applies. *Calloway*, 854 F.2d at 1474. "[W]here a represented party either did not knowingly authorize or participate in the filing of a paper that violated Rule 11, sanctions against that party are not appropriate." *Id.* However, "[w]here a party misleads an attorney as to the facts or the purpose of a lawsuit, but the attorney nevertheless had an objectively reasonable basis to sign the papers in question, then sanctions on the party alone are appropriate." *Id.* at 1475, *citing Friedgood v. Axelrod*, 593 F.Supp. 395 (S.D.N.Y.1984).

While Rule 11 is targeted at relieving courts of the burden of processing frivolous claims, this Court notes that the Rule unfortunately generates enough satellite litigation to undercut the goal of reducing the court's workload. *See* Note, *Has a Kafkaesque Dream Come True? Federal Rule of Civil Procedure 11: Time for Another Amendment?*, 67 B.U.L.Rev. 1019 (1987).

---

**28.** *See generally*, Note, *The Intended Application of Federal Rule of Civil Procedure 11: An End to the "Empty Head, Pure Heart" Defense and Reinforcement of Ethical Standards*, 41 Vand.L.Rev. 343 (1988).

**29.** *See generally* Note, *The 1983 Amendments to Rule 11: Answering Critics' Concern With Judicial Self–Restraint*, 61 Notre Dame L.Rev. 798 (1986); Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181 (1985).

Rule 11, like Rule 37(b)(2), is phrased as a directive, employing the imperative "shall." "Accordingly, where strictures of the rule have been transgressed, it is incumbent upon the district court to fashion proper sanctions." *Eastway*, at 254, n. 7. District courts have wide discretion under Rule 11 in determining lack of factual basis or improper purpose, because "the district court has tasted the flavor of the litigation and is in the best position to make these determinations." *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C.Cir.1985).

In considering Rule 11 sanctions, a Court cannot use hindsight and instead must base its award on specific instances of misconduct, resolving all doubts in favor of the signer. *Oliveri*, 803 F.2d at 1275. In an action such as the present one—where plaintiffs' alleged misconduct spans one year, implicates three statutory bases and includes at least 12 separate instances of potentially sanctionable conduct—one is tempted to consider only whether the cumulative effect of plaintiffs' conduct warrants sanctions. Nevertheless, under Rule 11, courts should not take a broad brush approach to sanctions. *See Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir.1986); *Levine v. Arabian American Oil Co.*, 664 F.Supp. 733 (S.D.N.Y.1987). Moreover, in this circuit, Rule 11 applies only to the initial signing of a paper and does not impose a continuing obligation on the party to withdraw meritless claims. *Oliveri*, 803 F.2d at 1274–1275. Thus, courts may not look to the cumulative effect of several signings to infer bad faith from a pattern of abuse.[30] Accordingly, the Court will examine each of the City's claims individually.

### 1. The Complaint

The City claims that Rule 11 sanctions should be levied against plaintiffs for filing a complaint that was not well-grounded in fact or law. Plaintiffs' complaint alleged that the contract between the City and West 57th amounted to (i) a conspiracy

to monopolize, (ii) an attempt to monopolize, (iii) price fixing, (iv) an illegal requirements contract and (v) a contract in restraint of trade. The Court need not consider whether these claims would have ultimately been successful, but only whether, when filed, the alleged claims had some chance of success. Upon review of the complaint, the Court finds that it is not "patently clear that [the claims] ha[d] absolutely no chance of success," *Eastway*, 762 F.2d at 254, and, consequently, plaintiffs' complaint was not frivolous.

The City next alleges that the complaint was interposed for an improper purpose, thus implicating the second part of Rule 11's bipartite strictures. The City contends that when plaintiffs commenced the lawsuit they never intended to reveal their own documents. Rather, the City asserts, plaintiffs instituted the action in order to gain documentary discovery from the City and to create "a cloud over the West 57th Street project" for as long as they could. City Mem. at 10. The City further submits that plaintiffs' attorneys—Walpin and Miuccio—breached their obligation to adequately investigate their client's purpose in bringing the suit. The City claims that counsel either conspired with their clients or made only a halfhearted inquiry into their clients' willingness to disclose documents, rather than conducting the "reasonable inquiry" required by Rule 11. The City suggests that plaintiffs' evasive and dilatory tactics marked by repeated defiance of Court orders, unconvincingly masked by the submission of contradictory documents, clearly establishes that plaintiffs never intended to pursue their claims for anything but for an improper purpose. *See* City Rep. Mem. at 53–56. Although not without some surface appeal, the City's arguments are without merit.

As noted earlier, the City may not use hindsight to infer bad faith. Under Rule 11, the signatory's conduct must be judged as of the time of the signing. *See Greenberg, supra* 870 F.2d at 956. Nowhere does the City show that plaintiffs intended,

---

**30.** This does not mean, however, that subsequent conduct cannot support an inference that an earlier signing was done in bad faith. *See, e.g., Calloway, supra* 854 F.2d at 1469–73.

at the outset of the action, to pursue their complaint for an improper purpose. There is no evidence indicating that counsel failed to adequately discuss the action with their clients, nor is there any showing that another attorney, after a full discussion with plaintiffs, would not have filed the complaint.[31] The City in fact concedes that the lack of reasonable inquiry charge is based on "speculation." City Mem. at 13. Such attenuated links, supported only by hindsight and guesswork, cannot support sanctions under Rule 11.

### 2. Signing and Submission of Discovery Documents

■ The City argues that plaintiffs' submission of their second April 2 letter clarifying their April 2 Responses [32] provides a basis for Rule 11 sanctions. The City claims that when counsel signed the Responses on the morning of April 2, 1987, representing that certain documents would be produced pursuant to an appropriate confidentiality order, they had not made reasonable inquiry as to whether their clients would in fact produce such documents. However, the submission of the clarifying letter alone does not support an inference that counsel failed to reasonably inquire into plaintiffs' willingness to disclose documents prior to signing and submitting the April 2 Responses. Attorney Walpin received assurances from his clients both before the action was commenced and again on February 19, 1987 that they were willing to disclose confidential documents relating to price, cost and customers, and received information to the contrary only after the April 2 Responses were served. *See* Walpin Supp. Aff. ¶ 34. Viewing the evidence in favor of the signer, the Court cannot find that Walpin failed to make a reasonable inquiry prior to the April 2 Responses.

■ The City next asserts that the representations made in the clarifying letter were frivolous. The City argues that no competent attorney would have signed a letter stating that their clients would not produce documents relating to costs and prices in an antitrust action that alleged the fixing of prices at an artificially high level. With this position the Court agrees. As this Court previously stated with respect to Rule 37 sanctions, the documents withheld pursuant to the April 2 letter went to the heart of the antitrust suit. While counsel is entitled to rely on their client's statements where they are objectively reasonable, *Calloway*, 854 F.2d at 1470, the Court finds that it was unreasonable for antitrust plaintiffs, by counsel, to refuse to disclose all documents relating to price, costs and customers, based on the City's earlier inadvertent production at a deposition of some confidential documents of Ally. Thus, the Court finds that sanctions are warranted under Rule 11 for submission of the April 2 clarifying letter.

### 3. The Request For Entry of Default

■ The City contends that plaintiffs' conduct while a stay was in place in seeking to obtain entry of a default judgment against West 57th on July 15, 1987, after Ally and West 57th had failed to obtain counsel, warrants Rule 11 sanctions. Contrary to the City's contention, however, the Court had invited the application for a default judgment and thus it was outside the scope of the stay. The request for entry of default and the proposed default judgment therefore do not rise to misconduct. Moreover, the Court cannot conclude, on the basis of the evidence before it and without the benefit of hindsight, that the default judgment was submitted for the improper purpose of "harassing the City and needlessly increasing its litigation costs." Miller Aff. ¶ 38. Thus, neither the content of the default judgment nor its submission warrants sanctions under Rule 11.

### 4. The Quadrozzi/Manzo Tape

■ The City contends that the recordedly 1983 conversation between plaintiff

---

**31.** Viewing all evidence in favor of the signor, (*Oliveri, supra,* 803 F.2d at 1275) the Court notes that Walpin advised his clients of their obligations as federal antitrust plaintiffs including their discovery obligations and Walpin purportedly received assurances that his clients were prepared to comply. *See* Walpin Aff. ¶ 29.

**32.** *See supra* at 68.

John Quadrozzi and Frank Manzo, in which among other things Quadrozzi said, "you gotta protect us ... there's a rule, no new plants," Ex. 48, amounts to "clear evidence" that Quadrozzi knew that Manzo was an organized crime figure. The City claims that Rule 11 sanctions should be imposed on plaintiffs for objecting to their Requests for Admissions on frivolous grounds rather than withdrawing Quadrozzi's 1986 affidavit—which stated that he never knowingly associated with any organized crime figures. Miller Aff.Ex. F. The Court agrees that counsel's conduct in this instance evidences unreasonable inquiry, and accordingly Rule 11 sanctions are appropriate.

Plaintiffs are indeed correct in claiming that an attorney must "clearly know, rather than suspect, that a fraud on the court has been committed before he brings this knowledge to [the] court's attention." P.Mem. at 32, *quoting In re Grievance Committee*, 847 F.2d 57, 63 (2d Cir.1988). Thus, Attorney Walpin admits conferring with Quadrozzi but states that nothing Quadrozzi said caused him to clearly know rather than suspect, that a fraud on the Court had been committed. Walpin's purported disclaimer merely states, however, that he "was not advised by [Quadrozzi] that the [City's evidence] ... in any way raised facts that controverted his prior affidavit." Walpin Aff. ¶ 59. The inference of no reasonable inquiry is compelling and Attorney Walpin's disclaimer does nothing to dispel it. It reveals no meaningful inquiry whatsoever, much less a reasonable one. Thus, the plaintiff's objections to the City's Requests for Admission, unsupported by a reasonable inquiry, are sanctionable under Rule 11.

Moreover, counsel's objections submitted in response to the City's Requests for admission were baseless in law. The legality of the electronic surveillance which resulted in the Quadrozzi/Manzo tape had previously been established. *See United States v. Santoro*, 647 F.Supp. 153, 159 (E.D.N.Y. 1986). Sanctions thus shall be imposed for the submission of frivolous objections to the Requests for Admissions.

### 5. *November 30 Discovery Response*

 Plaintiffs admit that, at a November 27, 1987 meeting amongst themselves, they had decided that they would prefer a dismissal with prejudice than to produce the price, cost and customer information. The plaintiffs signed Supplementary Responses to the City's document requests on November 30 and on December 2 moved for dismissal without prejudice. The City argues that plaintiffs' admitted decision, three days before signing the Supplementary Response of November 30, that they would sooner accept dismissal with prejudice than produce their confidential documents "virtually mandates the imposition of sanctions" for their signing the November 30 Supplementary Responses. City Rep.Mem. at 64. The Court does not agree.

The meeting that plaintiffs held on November 27, 1987 does not incontrovertibly establish that plaintiffs acted in bad faith in serving their Supplementary Responses on November 30. However improbable, the possibility remained that this Court would have denied plaintiffs' motion to dismiss pursuant to Rule 41(a)(2) on December 2, 1987 and ordered plaintiffs to proceed with the lawsuit. In any event, as of November 30 the lawsuit was alive and plaintiffs were under a compulsion to respond to every discovery request. Moreover, the Court cannot find a basis for sanctions in preferences stated amongst plaintiffs informally at a strategy meeting. Sanctions based upon the November 30 Supplementary Response are not warranted.

### 6. *Motion for Leave Voluntarily to Dismiss*

 The City finally suggests that the imposition of Rule 11 sanctions is appropriate because plaintiffs "were not being candid with the Court as to the reasons for dismissal" on December 2, 1987. City Rep. Mem. at 66. The City claims that rather than moving to dismiss their claims due to their invalidity, plaintiffs brought their motion as a last resort to avoid document production. The Court disagrees and will

not impose sanctions on plaintiffs for attempting to abate or dissolve their lawsuit. In December 1987, West 57th was unable to produce enough concrete sufficient to pose a competitive threat to plaintiffs and, consequently, plaintiffs' claims were indeed no longer valid. The Court will not look behind plaintiffs' stated reason for dismissal when that reason is a credible one. Sanctions are denied for the December 2 motion.

### 7. Summary

Applying *Eastway* and its progeny, and avoiding the benefits of hindsight, the Court finds that Rule 11 sanctions are warranted for two specific instances of misconduct: submission of the April 2 clarifying letter, and submission of the objections to the Requests for Admission (regarding the Quadrozzi/Manzo Tape).

### C. § 1927 and the Common Law

▮ Under the so-called "American Rule" each party must bear the cost of his or her own attorneys' fees, regardless of which party prevails. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). The court's has inherent equitable power, however, to authorize the award of monetary sanctions when a party engages in bad faith litigation. *See Id.* at 258–59, 95 S.Ct. at 1622–23. Such an award may be imposed on the party and/or the attorney. *See Oliveri,* 803 F.2d at 1272.

▮ According to 28 U.S.C. § 1927 a court may impose monetary sanctions on one who "so multiplies the proceedings in any case as to increase costs unreasonably and vexatiously." 28 U.S.C. § 1927. The standards for an award under § 1927 and the common law are identical, except that awards under § 1927 may be imposed only against one who is authorized to practice before the courts. *See Oliveri,* 803 F.2d at 1273. The Second Circuit has interpreted

the standards restrictively so as not to deter persons from pursuing colorable claims. *See e.g., Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 344 (2nd Cir.1986).

▮ Absent " 'clear evidence' that the challenged actions 'are entirely without color and are taken for reasons of harassment or delay,' " courts have declined to uphold awards under the bad-faith exception to the "American Rule" and under § 1927. *Id.* (citations omitted).[33] Thus, in contrast to the more expansive Rule 11 which provides for the imposition of sanctions whenever a "pleading has been interposed for any improper purpose *or where* the pleading is not well grounded in fact,"[34] § 1927 requires that there be *both* a colorless claim *and* an improper purpose. *See Dow Chemical,* 782 F.2d at 344; *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1983); *Nemeroff v. Abelson,* 620 F.2d 339, 348 (2d Cir.1980); *Browning Debenture Holders' Comm. v. DASA Corp.,* 560 F.2d 1078, 1088 (2d Cir.1977). In further contrast to Rule 11 which is limited to the signing of particular papers, § 1927 imposes a continuing prohibition against bad faith litigation. *See Oliveri,* 803 F.2d at 1274.

▮ The City contends that plaintiffs' actions regarding their discovery obligations, beginning with their April 2, 1987 Response and clarification letter and continuing through their Rule 41 motion to dismiss on December 2 1987, constitute "clear evidence" that plaintiffs unreasonably and vexatiously multiplied the proceedings. After an exhaustive review of the mountains of paper submitted in connection with this litigation, the Court cannot find plaintiffs advanced a colorless claim for an improper purpose. As is evident from this opinion, plaintiffs' conduct was far from exemplary. Indeed, plaintiffs' counsel's actions frustrated the City in its discovery attempts, prolonged this litigation, and wasted limited judicial resources. Nevertheless, "clear evidence"

---

**33.** *See also Colombrito,* 764 F.2d at 133 ("neither meritlessness alone, nor improper motives alone, will suffice [for an award based on the bad faith exception]").

**34.** *Eastway,* 762 F.2d at 254 (emphasis in original).

that plaintiffs willfully abused the judicial process is lacking and, thus, the Court will not award sanctions under either § 1927 or under the Court's inherent power. *See Oliveri,* 803 F.2d at 1272.

### III. CONCLUSION

Rule 11 sanctions are imposed against plaintiffs' counsel for submission of the April 2 clarifying letter and submission of the objections to the Requests for Admission, in an amount equal to the reasonable cost of responding to such submissions, and the costs incurred with respect to these submissions in submitting the present sanctions motion. This cost is to borne by the attorneys alone; in the absence of bad faith, Rule 11 sanctions are not imposed against the plaintiffs themselves. Within seven days of this Order, the City shall submit an affidavit stating such costs. Thereafter, plaintiffs' counsel shall respond within seven days.

Furthermore, Rule 37 sanctions shall be imposed for failure to comply with three of the Court's discovery Orders—those of April 14, September 10, and November 10 —in an amount equal to the reasonable costs incurred in responding to such orders, as well as the costs incurred with respect to these orders in submitting the present sanctions motion. Since Rule 37 sanctions may be imposed against parties even in the absence of bad faith, and because plaintiffs have not had an opportunity to be represented by independent counsel, the Court reserves judgment as to how these costs shall be apportioned between plaintiffs and their counsel. Plaintiffs, by independent counsel, shall have twenty days to submit an affidavit as to why they should not bear at least half of the Rule 37 sanctions. Both plaintiffs' counsel and the City shall have seven days to respond.

SO ORDERED.